## C. K. LESLIE v. STATE.

No. A-3469. Opinion Filed Sept. 18, 1920.
Rehearing Denied Nov. 28, 1922.
(210 Pac. 297.)

(Syllabus.)

1. Appeal and Error—Review Limited to Questions Decided Adversely to Appellant. Only those questions can be considered upon appeal, unless jurisdictional, which were decided adversely to the appellant in the trial court.

2. Appeal and Error—Evidence Justifying Conviction. Where there is evidence in the record from which the jury could legitimately conclude that the defendant was guilty of the crime charged, the conviction will not be set aside because of the alleged insufficiency of the evidence.

3. Larceny—Evidence Sustaining Conviction of Grand Larceny. Evidence examined, and held sufficent to sustain the conviction.

Appeal from District Court, Wagoner County; Charles G. Watts, Judge.

C. K. Leslie was convicted of the crime of grand larceny, and appeals. Affirmed.

The state of Oklahoma prosecuted the defendant, C. K. Leslie, by information filed in the district court of Wagoner county, the charging part of which is as follows:

"That the said C. K. Leslie, then and there being the cashier of the Farmers' & Merchants' Bank of Coweta, a banking corporation organized and existing under the banking laws of Oklahoma, then and there being, did then and there willfully, unlawfully, fraudulently, and feloniously take, steal, and carry away by fraud, and without the consent and against the will of the true owner, the sum of four hundred sixty ($460.00) dollars, good and lawful money of the United States, and of the value of four hundred sixty ($460.00) dollars, then and there the personal property of the Farmers' & Merchants' Bank of Coweta, a banking corporation as aforesaid, in said Wagoner county, Oklahoma, with the unlawful, willful, felonious, and fraudulent intent then and there of him, the said C. K. Leslie, to deprive another thereof, to wit, the true owner, the said Farmers' & Merchants' Bank of Coweta, a banking corporation as aforesaid, and to convert the said four hundred sixty ($460.00) dollars to his own use and benefit, contrary," etc.

Defendant pleaded not guilty, and upon the issues so joined, a trial was had on the 20th day of October, 1917, resulting in a verdict finding defendant guilty as charged in the information, but leaving the punishment to be imposed by the court.

Defendant in his petition in error, while alleging several grounds for reversal of the judgment, solely relies in the brief presented upon the ground that the evidence is insufficient to

sustain the verdict of the jury upon the charge contained in the information, in that the evidence totally fails to show any larceny of the funds of the bank.

The evidence in this case discloses that defendant, on the 4th day of September, 1915, and for a considerable length of time before that date, was and had been the cashier of the Farmers' & Merchants' Bank of Coweta, Wagoner county, Okla., and that defendant was also acting as guardian for certain minor children, and as such guardian was desirous of purchasing certain lots of land in the town of Coweta from one Ora Sands; the said Ora Sands being at the time guardian of certain other minor children, and as such guardian desired to sell the said certain lots belonging to her wards to defendant. As early as the 10th of May, 1915, Ora Sands had overdrawn her account in the Farmers' & Merchants' Bank of Coweta in the sum of $239.98, and the bank examiners of the state of Oklahoma, on discovering this and other overdrafts in said bank, demanded of the defendant that, as cashier of the bank, he collect the said overdrafts and charge them off as an asset of the bank. On the 3d day of September, 1915, Ora Sands had overdrawn her account in the sum of $355.83, and on the following day defendant drew a sight draft on her for the sum of $460, and credited her account with said amount; by this means eliminating the overdraft for $355.83, and giving the said Ora Sands a credit of $104.17.

The evidence also discloses that the draft drawn by defendant for $460 against Ora Sands was never presented to the said Ora Sands for acceptance or payment, but was placed by defendant in the cash drawer of the bank, and there carried as a cash item until it was found by the bank examiner about the 21st day of December, 1915.

When defendant was accosted by certain of the bank examiners concerning this draft which was drawn by him on

Ora Sands and credited to her account, and carried as a cash item, defendant told the examiners that said draft represented money that he (Leslie) owed Ora Sands, and that defendant did not at that time have money to his personal account, and therefore had made the draft to represent cash, and he authorized the examiner to charge the amount of the draft to his personal credit in the bank, which was done; and the defendant admitted to the bank examiners, and to the representative of a bonding company which had bonded defendant, that this particular draft and others of a similar nature found in the cash drawer should be charged to his account for the reason that he had used the money, and defendant stated that the Ora Sands draft was a "phoney" draft and that he had no right to draw it. Defendant also stated that he would try to make satisfactory arrangements with the state banking department with respect to these items.

Defendant in his own behalf testified that the overdrafts carried in the bank had been criticised by the bank examiners; that he drew the Ora Sands draft for $460, gave her credit therefor upon the books of the bank, and placed the draft in the cash drawer of the bank, thereby taking up her overdrafts and giving her a credit of $104.17, which she subsequently checked out; that said draft for $460 drawn by him was never presented to Ora Sands for acceptance or payment, and that he had no authority from Ora Sands to draw the same. He further testified that the sum of $460 was to be paid to Ora Sands in the event that title to certain real estate which the defendant was purchasing from her was made good, otherwise Ora Sands was to take up the draft, and, if the title was not made good, the defendant himself was to take up the draft.

The record discloses that the alleged dealings between defendant and Ora Sands, as claimed by defendant, were in their

respective relations as guardians for certain minor children, and that defendant was not dealing with her in his capacity as an officer of the bank and there is no evidence in the record to show that defendant at any time ever had any funds on deposit in the Farmers' & Merchants' Bank of Coweta as guardian for any minor children.

The defendant denied stating to the bank examiners that the $460 draft to Ora Sands, or any other draft found in the cash drawer, was a "phoney" draft.

The trial court, in submitting the issues in this case, instructed the jury, in a clear and concise manner, covering both the theory of the law of the case from the standpoint of the state and the defendant, and, as this court considers the trial court's instructions a model set, they are incorporated in this opinion, and are as follows:

"Gentlemen of the Jury: This is a prosecution by the state of Oklahoma against the defendant, C. K. Leslie, charging him with the crime of larceny, committed in this county and state on or about the 4th day of September, 1915, and anterior to the presentment of the information in this court. Substantially the information charges that the defendant, Leslie, being the cashier of the Farmers' & Merchants' Bank of Coweta, a banking corporation under the laws of the state, did willfully, unlawfully, fraudulently, and feloniously take, steal and carry away by fraud the sum of four hundred and sixty ($460.00) dollars, good and lawful money of the United States, the personal property of said bank, with the unlawful, willful, felonious, and fraudulent intent of the defendant to deprive the bank thereof, and to convert said sum to his own use and benefit, contrary to the statutes in such cases made and provided, and against the peace and dignity of the state.

"When the defendant was arraigned he entered a plea of not guilty. The information and the plea of not guilty form the issue you are to try. The information is not evidence

against the defendant, nor is the plea of not guilty evidence in his behalf.

"This court instructs you that larceny, as defined by the laws of this state, is the taking of personal property accompanied by fraud or stealth and with intent to deprive another thereof. Larceny is divided into two degrees, grand and petit. Grand larceny is where the property taken is of value exceeding twenty ($20) dollars, as applied to this case, and is punishable by imprisonment in the state penitentiary by a term not exceeding five years.

"You are further instructed that the burden of proof rests upon the state to prove each and every material allegation of the information to your satisfaction beyond a reasonable doubt, and if, after a consideration of the whole case, you entertain a reasonable doubt as to the guilt of the defendant, you will resolve that doubt in his favor and acquit him.

"You are further instructed that the defendant is presumed to be innocent of the crime of which he stands charged, and this presumption of innocence attends and follows him throughout the trial, or until it is overcome by competent evidence which convinces you of his guilt beyond a reasonable doubt.

"The court instructs you that fraud, within the meaning of the statute relating to larceny, is the obtaining possession of property or money by means of falsehood, deception, or artifice; therefore you are instructed that if you find and believe from the evidence beyond a reasonable doubt that the defendant, C. K. Leslie, did in this county and state, on or about the 4th day of September, 1915, and anterior to the presentment of the information in this court, and while cashier and active managing officer of the Farmers' & Merchant's Bank of Coweta, used any fictitious and worthless checks or draft to obtain the funds of said bank, and did by use of any such means of fictitious, worthless, or phoney check or draft obtain from said bank funds in exess of twenty ($20) dollars, with intent to deprive the bank thereof, then in that event the

defendant would be guilty of the crime of larceny, and it will be your duty to return a verdict of guilty.

"You are instructed that testimony has been submitted to you by the court as competent for your consideration tending to show that other larceny of sums of money, other than as charged in the information, and that false entries thereof were made and committed by the defendant; and in this matter you are instructed that if you believe from the evidence beyond a reasonable doubt that the defendant did steal such sums and make such false entries, and fraudulently appropriate such sums of money to his own use as therein mentioned, then, in such case, said evidence is only to be considered by you as bearing upon the fact whether or not the defendant stole and fraudulently appropriated the specific amount alleged in the information, and at the time alleged in the information, as tending to show the intent, if any, of the defendant in the commission of the offense alleged against him, and for this or such purpose alone you will consider such evidence of other offenses. And in this connection you are told that, although you may believe that such other offenses were committed by the defendant, but you should have a reasonable doubt that he committed the specific offense alleged against him in the information, then it would be your duty to acquit him; otherwise you should convict him.

"Gentlemen of the jury, the defendant says and claims he is not guilty of the offense of which he stands charged; that in truth and in fact the item of $460 with which he stands charged with stealing from the bank constituted an overdraft in the sum of $355.83 by one Ora Sands, who at that time and prior thereto was a customer of said bank; that on the 4th day of September, 1915, said overdraft standing against the said Ora Sands, he drew a draft as cashier of the bank against the said Ora Sands and in favor of the bank in the sum of $460, and placed same in the cash drawer as an obligation of indebtedness against the said Ora Sands for the purpose of taking up said overdraft, and also in furtherance and in accordance to a prior agreement and understanding with her to

the effect that in the event a certain real estate transaction wherein she was guardian of her minor children, and wherein the defendant was guardian of the Nero children, minors, went through and became consummated, then and in that event the said defendant for his wards would take up said draft and pay said funds into the bank, or, in the event said deal was not perfected and consummated as above set forth, then and in that event the said Ora Sands would take up said draft and pay said funds into the bank in full satisfaction thereof; that said transaction was in good faith, and not for the purpose of injuring or taking away the funds of the bank unlawfully, and that the draft was intended as a loan to the said Ora Sands. You are therefore instructed that if you believe from the evidence in this case the matters and things above enumerated, and that the defendant, Leslie, acted in good faith, and not with the intent to unlawfully take the funds of the bank, but for the purpose of consummating the real estate deal mentioned, or, if you have a reasonable doubt thereof, then and in that event it would be your duty to resolve the doubt in favor of the defendant and acquit him.

"You are further instructed that if you find and believe from the facts in this case beyond a reasonable doubt that the transaction herein mentioned was not good banking business, and not in accordance with the rules and regulations of the banking department and in keeping with good banking business, this, however, is not sufficient evidence to warrant a conviction at your hands; but you must find and believe from the evidence beyond a reasonable doubt that the transaction was not in good faith, but for the purpose of taking the funds from the bank unlawfully and fraudulently, and for the purpose of depriving the bank of its credits or funds; and in this connection the court instructs you that under the law the defendant was civilly liable for the amount of the draft mentioned, but such civil liability alone, and without the elements above mentioned, does not constitute larceny, and it would be your duty to acquit the defendant, unless you find and believe that he acted in bad faith and with the intent to unlawfully deprive the bank of its funds.

"You are instructed that you are the sole judges of the credibility of the witnesses, and the weight and value you will give to their testimony; and, in determining what weight and value you will give to the testimony of the various witnesses, you may take into consideration their manner and demeanor upon the witness stand; their fairness or lack of fairness; their intelligence or lack of intelligence; their interest, if any, in the result of your verdict; and if, upon consideration of the whole case, you believe that any witness has willfully, deliberately, and corruptly testified falsely to any material fact at issue in this case, you are then at liberty to disregard the testimony of such witness in whole or in part, remembering that you are the sole judges of the credibility of the witnesses and the weight and value you will give to their testimony."

Watts & Summers and Newton & Pinson, for plaintiff in error.

S. P. Freeling, Atty. Gen., and Wm. H. Zwick, Asst. Atty. Gen., for the State.

MATSON, J. (after stating the facts as above). Considerable space is devoted in the brief of counsel for defendant to the proposition that there is a fatal variance between the allegations of the information and the proof adduced by the state in support of the charge.

In this connection it is contended that the proof tends, if at all, to support any crime it is that the defendant, as active managing officer of the bank, indirectly borrowed money from the bank, which act is deemed to be larceny under the provisions of section 270, Revised Laws 1910, a provision of the state banking laws.

This theory of the case was not contended for in the trial court, as there was no motion to direct a verdict of not guilty by reason of such a variance. The sole defense advanced in the trial court appears to have been that the specific transac-

tion which the information charges to have been larcenous and felonious was in fact a good-faith transaction on the part of the defendant, for which a civil liability may have ensued in favor of the bank and against him and his bondsmen, but for which no criminal liability in any event could be charged to him. This theory of the defense was fully covered in the court's instructions.

We deem it unnecessary, therefore, to enter into any discussion of the question as to whether an accused managing officer of a state bank may be charged with larceny under the common-law definition of the crime, and without a fatal variance ensuing proved to be guilty of borrowing money from the bank either directly or indirectly, which said offense is made larceny by section 270, supra; as the sole question presented by this appeal is whether or not the facts are sufficient to sustain the conviction of defendant of stealing the funds of the bank by fraud in the manner and form as alleged in the information.

This court has repeatedly held that, if there is any evidence in the record from which the jury could legitimately conclude that the defendant was guilty of the crime charged, the conviction will not be set aside because of the insufficiency of the evidence. Clingan v. State, 15 Okla. Cr. 483, 178 Pac. 486; Crilley v. State, 15 Okla. Cr. 44, 181 Pac. 316.

In this case the evidence establishes that early in the year 1915 Leslie permitted not only Ora Sands, with whom he was dealing for the purchase of certain real estate, to make an overdraft in the bank, and thereafter drew a sight draft on her which he placed in the cash drawer of the bank, and never submitted it to her for acceptance or payment, but was guilty of doing the same thing in several other instances. The evidence of these other similar transactions was admissible for

the purpose of showing the intent with which the particular act charged in the information was committed, as covered by the court's instructions. We do not think it absolutely necessary for the state to prove that defendant physically extracted the sum of $460 of money from the bank, nor that he obtained any benefit by reason of the larceny of this money. Under the charge, it was necessary only that the state prove that he took the money of the bank by fraud and with intent to deprive the bank thereof. That he took the money we think is proven beyond any reasonable doubt by the evidence on the part of the state. That the transaction was fraudulent we also believe to be sustained by the circumstances and means used by defendant to conceal the taking of the money. There is no contention that the bank at any time consented to any of these fraudulent transactions, and the manner in which the defendant obtained the money was concealed by the method pursued by him. Under the instructions of the court it was incumbent upon the jury to find beyond a reasonable doubt that this defendant used certain fraudulent means, to wit, fictitious and worthless checks, and "phoney" drafts, to obtain from the bank its funds in excess of $20, with the intent to deprive the bank thereof. On the other hand, the jury was instructed fully and clearly upon the theory of the defendant that he acted in good faith in these transactions, and without any intent to deprive the bank thereof; and in this connection the jury were told that, if they believed such facts to be true, they should acquit defendant; and further, if the jury had a reasonable doubt as to whether such facts were true they should acquit the defendant. It was incumbent upon the jury, therefore, before they could convict the defendant, to find beyond a reasonable doubt that he was guilty of the crime of larceny by fraud as charged in the information. The issues between the state and the defendant were fully covered by the court's

instructions in such a manner that the jury could not have been misled in the least as to the necessity of finding that the defendant, by means of fraud, stole the particular $460 of the money of the bank, as alleged in the information, or in that identical transaction stole a sum of money in excess of $20.

We are of opinion that the state's evidence, as summarized above and as appears in the record in this case, is amply sufficient to authorize the jury to reasonably conclude that defendant was guilty of the crime charged, and for such reason is sufficient to sustain the verdict and the judgment of conviction as pronounced thereon. Holding such view, it is incumbent upon this court to affirm the judgment, and it is therefore ordered that the judgment of the district court of Wagoner county sentencing the defendant to a term of two years' imprisonment in the state penitentiary be, and is hereby, affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.