## GEORGE MILLS v. STATE.

No. A-6570.   Opinion Filed April 20, 1929.
(276 Pac. 499.)

Sigler & Jackson, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was convicted in the district court of Carter county on a charge of larceny of chickens, was convicted, and his punishment fixed at 30 days in jail and a fine of $100. Motion for new trial was filed and overruled, and the defendant has appealed to this court.

The testimony of the state, in substance, is that on the night of the 16th of February, 1926, Mrs. G. N. Jack-

son lost a number of chickens. She notified the sheriff the chickens had been taken, and the sheriff notified the poultry house in Ardmore, and was advised by the firm of Newman & Boucher that on the morning of the 17th of February they purchased a number of chickens from George Mills. Mrs. Jackson came to Ardmore and identified several of the chickens, and claimed the others looked like her chickens that had been stolen.

The state further showed that the produce firm purchased the chickens from G. W. Mills, and paid the defendant with a check amounting to $16.80; that the check was indorsed by the said defendant, Mills, and cashed at the First National Bank of Ardmore.

Carl and Malcom Jackson, sons of Mrs. G. N. Jackson, also identified part of the chickens found in the coop at the produce house as chickens that had been taken from their place.

The state further showed that, a day or two after the produce house had paid the defendant the $16.80 for chickens, the defendant came to the poultry house and had a conversation with Mr. Boucher, a member of the produce firm; the conversation being as follows:

"The defendant walked into the store and told me he wanted to speak to me; we walked back in the back of the store, and he asked me did I buy any chickens from him this week, and I said, yes, and he said I sold you some chickens before—it wasn't this week, he said are you positive about that, and he asked me when it was; I said Wednesday. About that time a man or somebody walked in, I don't remember who it was, and he said let's walk out here; we walked out on the sidewalk and he said, listen, I am a man of family and I don't want to get into any trouble, and you are going to get me in trouble. I sold you some chickens but not this week and I would like to get this straightened up. He said if I can straighten it up about the chickens will you be all right; I said I don't know about that; I bought the chickens and of course want to make

a profit besides, I don't know whether it will be all right. If I do, and give you a suit of clothes, a hat or a ten dollar bill will it be all right. I said, you are talking to the wrong man."

The substance of the state's testimony was that the chickens were identified as being the chickens of Mrs. Jackson, taken from her home the night of February 16, 1926, and that defendant sold them to the produce house the morning of February 17th, and received a check for $16.80 which he indorsed and received the money from the First National Bank of Ardmore. There was other testimony on behalf of the state from a witness Bob Short, tending to show the defendant's connection with the chickens.

The defendant called his daughters Edith and Pauline Mills, who testified to having assisted their father in catching the chickens on the night of February 16, 1926, at their home and assisted in putting them in sacks on the morning of the 17th of February, 1926, their father (the defendant in this case) taking the chickens to town to sell. Witness also testified to the chickens being a mixed bunch. The defendant called his wife, Vilna Mills, who testified that the defendant and two daughters caught the chickens the night before, where the chickens roosted, and that defendant brought them to town the next morning. The witness also testified that during the year they had raised about 150 chickens, they were barred Rocks, white and brown Leghorns, and some Rhode Island Reds; that defendant brought 18 chickens in all to town that morning.

The defendant took the stand and in substance testified he did not take any of Mrs. Jackson's chickens; that he did not know where she lived at the time; the chickens sold on the 17th of February, 1926, belonged to his wife; that he did not sell any of Mrs. Jackson's chickens on the 17th day of February, 1926, to Newman & Boucher.

On cross-examination he was asked if he talked to Mr. Boucher, and admitted he had talked with him two or

three days after the chickens were sold, in the presence of Bob Short. "I did not talk to him about this business. I did not go down to the produce house and talk to him about these chickens. Mr. Short carried me down there. I did not have any conversation with Mr. Boucher in which I told him I did not sell him any chickens excepting before Bob Short. I told him I did not deny the check I had indorsed. I said, Let me see it, I will tell you whether I had or not; I told Mr. Short out on the road that I had not sold wet chickens. I would not deny selling some of our own. I did not know where Mr. and Mrs. Jackson lived at the time."

The defendant has assigned three errors alleged to have been committed by the trial court. He first urges that the court erred in overruling the demurrer of the defendant to the plaintiff's testimony, and in overruling the motion of the defendant in the court below to instruct the jury to return a verdict of not guilty. Second, that the court erred in admitting certain irrelevant, incompetent, and immaterial testimony. Third, that the court erred in overruling defendant's motion for a new trial. These three assignments will be treated together. The testimony in this case is conflicting. This court has repeatedly held that, where there is evidence in the record from which the jury could reasonably conclude the defendant was guilty of the crime charged, a conviction would not be set aside because of the alleged insufficiency of the evidence. In this case the testimony is conflicting, the guilt or the innocence of the defendant was a question for the jury to decide under proper instructions as to the law by the court. The jury having heard the testimony and found a verdict of guilty, this court will not disturb the same. Pickett v. State, 35 Okla. Cr. 60, 248 P. 352; Leslie v. State, 22 Okla. Cr. 111, 210 P. 297; Dale v. State, 39 Okla. Cr. 258, 264 P. 219.

We are of the opinion that the said evidence, as sum-

marized above, and as appears in the record, is amply sufficient to authorize the jury to reasonably conclude that the defendant was guilty of the crime charged, and is sufficient to sustain the judgment of conviction as pronounced herein.

The judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.