## CHARLEY BEAM v. STATE.

No. A-9368.  March 31, 1939.
(89 P. 2d 372.)

C. B. Leedy, of Arnett, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, P. J.  This appeal is from a judgment of conviction, rendered on the verdict of a jury finding Charley Beam guilty of the offense of "attempted larceny of a domestic animal, as charged in the information, and assess his punishment at imprisonment in the state penitentiary for a term of one year."

The information under which the defendant was prosecuted in substance charged, that the said Charley Beam and Roy Titus, in Dewey county, on or about the 21st day of November, 1935, did feloniously take, steal and carry away, one red cow, two years old, the property of Arthur Hallmark.

A severance was granted.  Upon his separate trial the jury returned the verdict, January 27, 1937.

The principal question in the case appears to be whether or not the evidence is legally sufficient to support the conviction.

The undisputed testimony offered by the state shows that Arthur Hallmark, owner of said cow, lived four miles west of Lenora, and had some cattle two or three miles south of his place in a pasture adjoining the road; that on the date alleged he drove to this pasture about ten o'clock at night, with a tank of water for his stock; arriving there he saw a car parked on the highway, about 100 yards from

the open gate of the pasture. He took the tag number of the car, and went back and with his father returned to the pasture; the car was still there; he took the switch keys and leather holder, having name of "C. H. Beam," from the car and took the keys with him. The next morning he returned to the pasture, counted his cattle and found one short, then found a cow that had been butchered and partly skinned. He called the sheriff and the sheriff and a deputy arrived; they searched the parked car and found a .22 rifle, some old blankets and hog-hook in the car. He found three different footprint tracks near the car, and the same tracks where the cow was killed. That this was in Dewey county.

George A. Brown, deputy sheriff, testified that with the sheriff he went to Hallmark's pasture, about four miles southwest of Lenora; there found a Hudson automobile parked near the gate of the pasture, on the Lenora and Camargo road. He knew it was Charley Beam's car. They found a .22 rifle, a meat hook and some old blankets and an overcoat in the car. In the pasture they found a cow that had been butchered and partly skinned, but the hide was not taken off, found some tracks around the automobile, leading to the gate and down towards the dead cow; noticed three different men's tracks near the car and the same tracks near the dead cow, an axe was lying inside the cow, and they found a butcher knife in the road, the rifle had one empty shell in the chamber and nine in the magazine. That some of the foot tracks were made apparently by a new pair of shoes. He produced a pair of shoes that the defendant was wearing when they arrested him the next day in Arnett. That they took these shoes and compared them with the tracks near the parked car, and at the place the cow was killed, and they were similar, and the heel prints were identical. He produced the keys and holder received from Mr. Hallmark at the car that morning. He further testified that the defendant Beam claimed the automobile, and they returned it to him.

C. P. Lovett, sheriff of Dewey county, testified that with Deputy Sheriff Brown he answered Mr. Hallmark's call that morning and found a cow in the pasture that had been killed and skinned; that he investigated the tracks between the car parked by the side of the road and where the cow was found; there were three sets of tracks, one made by a new pair of shoes, or nearly new, two others made by well worn shoes, that did not make clear tracks; that the shoe prints showed plainly at the car and near the carcass. That they found a butcher knife in the road, and found the rifle introduced in evidence, in the car, also a hog or meat hook, and found an axe in the dead cow.

Clyde Gore testified that he saw the defendants, Charley Beam and Roy Titus, and another man with them in the store and restaurant in Lenora, between 8 and 9 o'clock on the evening of November 21, 1935; that they came in together and left together; and he talked with the defendant, Beam.

Mrs. Clyde Gore testified that she conducted a store and cafe in Lenora; was acquainted with Roy Titus, but did not know Charley Beam; that she saw Roy Titus in her store that night, but would not be positive that one of the men with him was Charley Beam. The three men came in there that night and had lunch and left together.

John Hartsell testified that he lives at Camargo, and remembers the occasion of some one killing Mr. Hallmark's cow; that he drove to Clinton that day and saw the defendant Beam driving a two-seated car, with two other men in the car, with him on the highway, three miles west of Lenora. He was going east and they were coming west. It was then about four o'clock; that he returned to Camargo that night, and saw a car parked by the side of the road, and it looked like the same car he saw the defendant driving that day.

When the state rested its case, defendant demurred to the evidence on the ground that it was wholly insufficient

to warrant a conviction for the crime charged against him, and moved for a directed verdict of acquittal. The demurrer and motion were overruled. Exceptions allowed.

The defendant did not offer himself as a witness in his own behalf, but called three or four character witnesses; each qualified and testified that his general reputation as a law-abiding citizen in the community in which he had lived the past 20 years was "Good."

The foregoing statement of the testimony in the case is a sufficient answer to the contention made that the evidence is not sufficient to sustain the verdict.

It rarely happens that the perpetrators of an offense, committed in the manner here proven, can be shown by witnesses who saw and recognized the defendants in the act, and resort must therefore ordinarily be had to circumstantial evidence.

Where the state relies upon circumstantial evidence to prove guilt, and the circumstances are consistent with guilt, and inconsistent with any reasonable hypothesis other than the defendant's guilt, they are sufficient to support conviction.

It is also contended that the judgment and sentence of the court does not conform to the verdict. That the jury found the defendant guilty of an attempt to commit the crime of larceny of a domestic animal and assessed his punishment at imprisonment in the state penitentiary for a term of one year, but the judgment of the court recites: "That the defendant, Charley Beam, is guilty of the crime of larceny as charged in the information."

The record shows that the judgment entered did not conform to the verdict of the jury.

Counsel for the defendant insists that a new trial should be granted on account of this variance between the verdict and the judgment and sentence of the court.

It is elementary that where a verdict of the jury assessing the punishment is in conformity with the law, the court must enter judgment and sentence in conformity to the verdict, and where there is a variance between the verdict of the jury and the sentence of the court, on appeal this court will remand the case with direction to the trial court to correct its judgment and sentence to make it conform to the verdict. Wood v. State, 4 Okla. Cr. 436, 437, 112 P. 11, 45 L.R.A., N. S., 673; Caudill v. State, 9 Okla. Cr. 66, 130 P. 812; Webber v. State, 18 Okla. Cr. 323, 193 P. 48; Barrett v. State, 39 Okla. Cr. 50, 263 P. 166.

Upon the record before us it appears that all of the proceedings had in the trial court up to and including the verdict of the jury were without material error, and the same are approved.

We find that up to and including the rendition of the judgment the defendant was not deprived of any substantial right. The variance between the verdict and judgment is apparently a clerical error.

It is considered and adjudged that for the variance between the verdict of the jury and the sentence of the court, this court remands the case, to the district court of Dewey county with direction to the trial court to correct the judgment and sentence to conform to the verdict of the jury.

It is further ordered that when the trial court corrects its judgment and sentence, the clerk of the district court of Dewey county is directed to issue forthwith to the sheriff of said county a commitment in accordance with the judgment of the court as pronounced and entered in conformity to the verdict of the jury.

BAREFOOT and DAVENPORT, JJ., concur.