# HOBART ALEXANDER v. STATE.

No. A-9426.   March 31, 1939.

(89 P. 2d 332.)

George H. Jennings, of Sapulpa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Everett S. Collins, Co. Atty., of Sapulpa, for the State.

BAREFOOT, J.  An information was filed in the district court of Creek county charging defendant with the crime of grand larceny.  He was tried, convicted, and sentenced to serve a term of one year in the penitentiary, and has appealed.

The first assignment of error is: "The trial court erred in the admission of incompetent and prejudicial testimony." Under this assignment of error, many parts of the evidence are discussed.  We have carefully read the record, and also the authorities cited, and do not find that any error occurred which would be prejudicial to the rights of this defendant. As a matter of fact, the rulings of the court on the admission of evidence against the defendant were very fair, and the court was very careful not to permit the state to introduce any evidence against the defendant that was not admissible under the well-defined rules of evidence.  It is, therefore, unnecessary to discuss in detail the various objections urged.

It is next urged that the court erred: "In overruling defendant's demurrer to the evidence, and in overruling defendant's motion for a directed verdict."  This assignment of error requires a review of the evidence.  Defendant was charged with the larceny of many articles of machinery and tools constituting an oil well drilling outfit. The state proved that this was the property of Houston Brothers, a partnership, composed of L. W. Houston and W. A. Houston. That some time during the year 1930 or 1931, this property had been stored on premises belonging to W. H. Juedeman, in Creek county.  That it remained there until in March, 1936, at which time, according to the evidence of Mr. Juedeman, the defendant came to his place, and made inquiry as to who was the owner of this property.

That he informed defendant it was the property of Houston Brothers, and defendant inquired as to where they could be found, and he told him in Tulsa. Someone was with defendant at the time whom he did not know. In a day or two the defendant again came to the home of Mr. Juedeman, and presented a written order, which was as follows:

"Tulsa, Okla.

"Mr. W. H. Juedeman.

"Kind sir please let Mr. H. E. Walker have what he wants of that meteral of ours that you have there.

"Yours truly,

"Huston Bros.
"17802 east second place    Tulsa, Okla."

At the time this order was presented by defendant, a Mr. Dukes, to whom defendant afterwards sold the property, was with him. They told defendant that if Houston Brothers had not paid him the rent for keeping the tools that he could sue or dispose of them as he pleased. A day or two after this defendant again came to the home of the witness with two trucks and several men, and the machinery was loaded and carried away under the direction of the defendant.

Kenneth Elsner corroborated the testimony of the witness Juedeman as to being present when defendant brought the order, and positively identified defendant as being the person who brought and delivered the same.

Both L. W. and W. A. Houston testified to the ownership of the property. That the order above quoted had not been given by them and was a forgery. That they had not disposed of the property to anyone. That the property stored was of the value of near $1,200.

From the above statement it will be observed that the evidence on behalf of the state presented a prima facie case against defendant, and the court did not err in overruling the demurrer of defendant to the state's testimony.

Defendant, testifying in his own behalf, testified that he was a licensed and bonded purchaser of second-hand equipment. That Henry Walker, on March 23 or 24, informed him he was getting an order for some tools at Slick, and he agreed to buy them. He stated that on the 24th or 25th of March, he went with Walker to look at the tools, and they went to Mr. Juedeman's blacksmith shop, and Mr. Walker delivered the order at that time to Mr. Juedeman. That he returned to Sapulpa, and before he paid Walker for the tools he took Jason Dukes to see the tools and he agreed to buy them from him, and on the following morning he secured a check for $50 from Mr. Dukes, cashed the same, and paid Walker $40, for the purchase price of the tools, and took his receipt, which was introduced in evidence, and was as follows:

"Receipt of Hobart Alexander for tool $40.00 at Slick, Oklahoma of H. B. Houston.

"paid in full.

"H. E. Walker."

Mr. Dukes paid $75 for the tools which included the purchase price, and the trucking bill to Sapulpa. That he honestly believed Walker had a right to sell the property. That the price paid was a fair price. That the tools were taken in the day time, and placed in Jason Dukes' supply yard with no effort to conceal them in any way.

Several witnesses were offered by defendant who corroborated different statements made by defendant. His wife testified to hearing the conversation between defendant and Henry Walker when the tools were purchased.

The state, on rebuttal, presented Henry Walker as a witness, and he testified that he sold defendant "four bits," which were located at Slick, for $40. They were not located on the Juedeman farm, and this was the only property he had sold defendant. The examination of this witness revealed that he had been an inmate of the insane asylum several different times. Nothing was shown that he had

been adjudged incompetent to testify. On cross-examination he was asked if the had made a written statement in the office of counsel for defendant that counsel's wife had taken in shorthand, and transcribed, and that he and his wife had read it and he signed it. His reply to this question was very unsatisfactory. He finally denied that he made any statement, but the court permitted the defendant to introduce the signed statement, which was as follows:

"I sold the property involved in the case of State v. Alexander for the sum of $40. I just went down there to Juedemans and bargained for this stuff with Mr. Juedeman, and Mr. Juedeman told me it belonged to Houston Brothers, and he went to the pump house, about a mile and a half north, and made an appointment with Mr. Houston to meet me. I did not hear the conversation over long distance, but when Mr. Juedeman came out he told me that I could meet Mr. Houston on North Main street in Tulsa the next night, and the next evening Mr. Juedeman went to Tulsa with me, and we met a man who was supposed to be Mr. Houston. We met him at the Hotel just right at the overpass on North Main, and I paid him $40.00 for the tools and equipment on the Juedeman farm.

"A few days later I negotiated to sell this property to Hobart Alexander and drove with him in his car down to Juedemans, and I presented the order to Mr. Juedeman. I later sold this property to Hobart Alexander for $40.

"At the time the order was delivered to Mr. Juedeman he was at the blacksmith shop, and I delivered the order to him.

"When Hobart paid me I gave him a receipt for the money and also told him that I had purchased the property from Houston Brothers.

"(Signed)   H. E. Walker."

Evidence was offered on rebuttal with reference to the value of the property, or some parts thereof. The court was very careful in permitting the introduction of this evidence. After he had permitted the introduction of the written statements signed by the witness Henry Walker, he per-

mitted the state to recall the witness H. W. Juedeman and he testified that he never, at any time, accompanied the witness Henry Walker to Tulsa, nor did he interview someone purporting to be either of the Houston Brothers, nor did he meet anyone at the hotel near the overpass on North Main. That he never went any where with him.

From the above statement it will be observed there was a direct conflict in the testimony offered by the state and by the defendant. The jury saw and heard the witnesses, and was in a better position to judge the truth or falsity of their evidence than is this court. Under the numerous holdings of this court, a verdict of the jury will not be set aside where there is a conflict in the evidence such as exists in this case. The court, therefore, did not err in refusing to sustain the motion for a directed verdict.

It is next contended that the court erred in refusing to give requested instruction No. 1, which was as follows:

"You are instructed, gentlemen of the jury, that where the property of another is openly taken under an honest, although groundless claim of right, such taking does not constitute the crime of larceny, and in this connection you are instructed that if you find that the defendant purchased the property described in the information from Henry Walker, prior to the time the same was taken by the defendant, and that the defendant believed that said Henry Walker had the right to sell the same, you will acquit the defendant, even though you find that the property described in the information was the property of Houston Brothers at the time, and that the said Henry Walker had right or authority to sell it.

"And in this connection, you are further instructed that if you have a reasonable doubt as to whether or not the defendant purchased such property from Henry Walker prior to the taking thereof, and as to whether or not the defendant believed that said Henry Walker had the right to sell the same, you will resolve this doubt in favor of the defendant, and acquit him.

"Refused. Defendant excepts.

"Exceptions allowed.

"Arthur Cochran, District Judge."

Defendant contends that this instruction should have been given in compliance with the rule that has been announced by this court in many decisions; that defendant is entitled to an affirmative instruction based upon the hypothesis that his testimony is true, and cites many cases in which the rule is announced. There is no question about the soundness of the rule, that a defendant is entitled to an affirmative instruction outlining his defense. The court, however, gave to the jury instruction No. 8, which was as follows:

"Gentlemen of the jury, the defendant claims that he honestly bought the oil field equipment described in the information from Henry Walker, and offers testimony in support of said claim.

"You are instructed to consider this testimony together with all the other testimony offered in this case, and after properly considering the same, in connection with all the other evidence in the case, you entertain a reasonable doubt of the defendant's guilt, you should find him not guilty. However, if you are satisfied beyond a reasonable doubt of the defendant's guilt, you should convict him.

"Arthur Cochran, District Judge.

"Given and Excepted to by the defendant.

"Exceptions allowed.

"Arthur Cochran."

It will be noted that the requested instruction was more liberal to the defendant than he was entitled to under the law. We are of the opinion that instruction No. 8, above quoted, presented to the jury the issues as to whether the defendant had honestly bought the property from Henry Walker and the jury, by their verdict, no doubt, did not believe defendant's testimony. The instruction might have been made more fully but the requested instruction offered by defendant was more favorable to him than he was en-

titled to under the law. Under the circumstances we do not believe that the court erred in refusing to give the requested instruction above quoted.

It is next contended by defendant that the court erred in giving instruction No. 5, which was as follows:

"Under the law of this state, all persons concerned in the commission of a crime, whether it be a felony or misdemeanor, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals.

"To aid and abet may consist of words spoken or acts done for the purpose of assisting in the commission of the crime or of encouraging its commission.

"Arthur Cochran, District Judge.

"Given and excepted to by the defendant.

"Exceptions allowed.

"Arthur Cochran, District Judge."

It is stated in defendant's brief that the giving of the above instruction is error: "* * * in that it authorizes the jury to convict the defendant not only of the offense charged in the information upon which the state relied for a conviction, but also of another separate and distinct similar offense not relied upon by the state in the information, or proof shown by the record herein."

A complete answer to this argument is the statute of this state, which has abolished the rule of the common law; and provides that there shall be no distinction in accessories before the fact and principals, and that any person who aids or abets in the commission of a crime in this state is guilty as a principal. Oklahoma Statutes 1931, sec. 2902, Okla. Stats. Anno. Title 22, sec. 432, provides:

"The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they

directly commit the act constituting the offense, or aid and abet in its commission, though not present, must be prosecuted, tried and punished as principals, and no additional facts need be alleged in any indictment or information against such an accessory than are required in an indictment or information against his principal."

This statute has been construed by this court many times, and it has been universally held that it is not necessary to allege additional facts in an information against an accessory than are required against his principal, and also that if allegations of an information are such that defendant is a principal, that proof that he aided or abetted in the commission of the crime is sufficient to justify a conviction as a principal.

The case of Sanditen v. State, 22 Okla. Cr. 14, 208 P. 1040, is one very similar to the facts in the instant case, and not only substantiates the above statement, but cites and quotes from many decisions rendered prior thereto.

The case of Longshore v. State, 27 Okla. Cr. 128, 225 P. 573, also construes the above statute and distinguishes the facts of that case from that of Gracy v. State, 13 Okla. Cr. 643, 166 P. 442, which is cited and relied upon by defendant. In the Gracy Case it is clearly shown that two separate and distinct crimes had been committed, one in which the accused was principal, and the other in which he aided and abetted another. There were no such facts in the case at bar. The defendant here was charged with the commission of a single offense, and he was guilty under the above statute whether he committed the crime as principal, or whether he aided or abetted therein. The court did not, therefore, err in giving the instruction above quoted, under the facts in this case. Dickson v. State, 26 Okla. Cr. 403, 224 P. 723; Davis v. State, 44 Okla. Cr. 141, 279 P. 976; McGarrah v. State, 17 Okla. Cr. 240, 187 P. 505; State v. Fraser, 105 Ore. 589, 209 P. 467.

14

Finding no error in the record, the judgment of the district court of Creek county is therefore affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.