## ELMER LAND v. STATE.

No. A-9983. April 29, 1942.

(125 P. 2d 779.)

Ward, Justus & Ward, of Tulsa, for defendant.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Dixie Gilmer, Co. Atty., of Tulsa, for the State.

BAREFOOT, P. J.  Defendant, Elmer Land, was charged in the district court of Tulsa county with the crime of grand larceny, was tried, convicted and sentenced to serve a term of two years in the penitentiary, and has appealed.

The charge in this case was that the defendant, Elmer Land, "did take, steal, and carry away" the sum of $4,600, the personal property of Lena Clark Lucas, on August 28, 1935, in Tulsa county.

It is first contended by defendant that the evidence is not sufficient to sustain the verdict. This contention is based upon the fact that the evidence of the state does not show that the money was stolen, if stolen at all, from the said Lena Clark Lucas, as alleged in the information, but that the money was taken to the home of the wife of defendant, Mrs. Myrtle Land, and that she had the same in her possession and control and that for that rea-

son there was a variance between the allegations in the information and the evidence of the state.

The evidence does not bear out this contention. The prosecuting witness was an old lady between 70 and 80 years of age. Her evidence was not as clear as it might have been. She could not remember dates and often became confused, but her testimony was substantially that she had been in the real estate business for many years and had been saving her money. She sometimes kept it on deposit in the National Bank of Commerce and sometimes kept it in a safety deposit box. She testified that sometime in the spring of 1935 she went to the bank and either drew therefrom the sum of $5,000 or she took it from a safety deposit box. That she signed a ticket for it and thought she took it from the safety deposit box. She took this money to her home and kept it hid, paid bills, and was intending to use it to pay other bills and to buy some property that was going to be sold. She was well acquainted with Mrs. Myrtle Land, the wife of defendant, and Mrs. Land asked her to bring the money to her house and she would help her hide it. She testified that she took $4,600, one $1,000 bill and four $500 bills, and sixteen $100 bills, to Mrs. Land's home, and there in the presence of Mrs. Land she hid it in the stove and told Mrs. Land not to tell her husband where it was. That she and Mrs. Land were going to pay some bills which she owed. That the defendant was not present and did not see or know the money was hid. That she trusted both the defendant and Mrs. Land, and this was the reason she left her money there. That she returned to the Land home either the next morning or a few days thereafter. She was confused as to the exact date, but knew it was in the summer of 1935. When she returned, the Lands were gone from their home. Their automobile was in the garage, and she went to the stove where she hid

her money and it was gone. There is nothing in the record to show that she saw either Mr. or Mrs. Land after this date until his return to Tulsa three years later. She went to the county attorney's office and swore out a warrant for defendant.

If this was all the testimony offered by the state in this case, the court should have sustained the motion for a directed verdict, but other evidence was introduced by the state.

W. W. Day testified that he conducted a restaurant and that he had known defendant for a number of years. That on the day he quit work at the Ferguson Baking Company he came to his place of business, in August, 1935, and this was the last time that he saw defendant until at the preliminary trial in 1939. That when defendant came to his place of business in August, 1935, he heard defendant talking to someone, and he said:

"The Witness: It was in the evening at supper—at dinner time and he came in to the counter and there were some others there then, I don't know just who it was, but I overheard the conversation about some lady letting him have some money to keep—he or he and his wife, I don't remember which it was—I couldn't quote his exact words. Q. (By Mr. Henneberry) Did you see him any more after he was in your restaurant and you overheard him say that? A. No, sir, I didn't. Q. You didn't see him any more until the preliminary trial? A. No, sir."

Claude Colley testified that he was in the cafe business in Tulsa and was acquainted with defendant. That he visited his place of business during 1935. He did not know the exact time, but recalled that police officers came to his place the next morning looking for defendant. He testified that defendant came to his place of business and had a cup of coffee. He said:

"A. Well, then he pulled his money out and he had a roll of money about so big, and he asked did we have

change for this. Q. What kind of a bill did he flash? A. It was a thousand dollar bill. Mr. Ward: We move to strike the word flash, he didn't say he flashed anything. The Court: Well, you might object to the word flash. Q. (By Mr. Henneberry) All right, what kind of a bill did he show? A. Well, there was a bill on top, it had three naughts on it, and it was the first one I had ever seen. Q. And how big around was that? A. About so big around. Q. Did you have any conversation with him about where he got the bill? A. No, nothing mentioned about that. Q. Did you cash it? A. No, sir. Q. Could you see the denomination of any of the other bills that he had? A. Well, I seen some one hundred dollar bills, looked like. Q. You informed the officers of this when they asked you about what had happened? A. Yes."

Felix Altaffer testified that he was a police officer and that he went to the place of business of witness Claude Colley on August 29, 1935, and he testified that this was the day that the prosecuting witness had made complaint to the police of having lost her money. He further testified to efforts on the part of the police to locate the defendant after that time.

A. M. Smith testified that he was a police officer and that he arrested defendant at the Ferguson Baking Company in May, 1939, when he returned to Tulsa. He testified that at the time of his arrest defendant said:

"Q. What else, if anything did he say to you? A. And he said he knew that a warrant had been issued and that he tried to get Mr. Ferguson to come down to the county attorney's office with him and get it fixed up, but Mr. Ferguson told him to just lay low and t h e y wouldn't even know he was here."

Frank W. Grammer testified that he worked for the Ferguson Baking Company at the time and after the defendant left their employment in August, 1935, that he did not know the exact date, but it was the last week in

August. He said that he had a conversation with defendant on the date he left. His testimony was as follows:

"Q. I mean the last day he worked, did he have any conversation with you? A. Yes. Q. Tell the jury what he said to you? A. He told me that Mrs. Lucas Clark left some money with him and we were discussing just what I would do in my case. A. Well, we were just talking about what I would do if that much money was left in my care. Q. Did he tell you how much was left? A. $4,600. Q. That is what he told you was the amount? A. Yes. Q. Tell the jury what conversation you had besides that. A. Well, we kidded along about it and I told him I thought he was lying, and he asked me would I believe it if I would see the money, and I told him I didn't know what I would believe, and he went on upstairs finally and changed clothes and came back down and showed me some money and turned around to me as he started out and told me if he didn't show up the next morning I could have his rolling pin. Q. Did he show up the next morning? A. No."

It is unnecessary to give a lengthy quotation of the evidence of defendant. He made a complete defense, and if the jury had believed his testimony and the evidence of those who corroborated him, they would have undoubtedly returned a verdict of not guilty. We unhesitatingly state that if there was no other evidence in the record than that of the prosecuting witness, and her evidence had not been corroborated by direct and circumstantial evidence, taking into consideration all of the evidence introduced in the case, we would not hestitate to reverse the same. The case of Vasco Goings v. State, 74 Okla. Cr. 161, 124 P. 2d 280, well illustrates this point. In that case there was absolutely no evidence to corroborate the evidence of the prosecuting witness. Here there is the testimony of numerous witnesses who corroborate the evidence of the prosecuting witness; and the jury who heard these witnesses, together with the testimony of the defend-

ant and those who corroborate his evidence, were in a better position to judge the weight and credibility of those witnesses than is an appellate court. The cross-examination of the defendant brought out many facts which the jury had a right to consider in view of the statements made by the defendant. It is not for this court to say what they would have done had they been members of the jury, but under the often announced rule that where there is a conflict in the evidence and the evidence of the state is sufficient, the verdict of the jury and the judgment and sentence will not be set aside by this court because of such conflict. It is only when the evidence is insufficient to sustain the judgment and sentence or where the evidence so clearly preponderates in favor of the defendant as to suggest the probability that the verdict was the result of misapprehension or partiality, that the case will be reversed. The facts in this case do not justify such finding.

The evidence does not bear out the contention of defendant that there was a variance between the facts alleged in the information and the evidence introduced. The prosecuting witness testified that she herself placed the money in the stove to hide, and that it was gone when she returned. While defendant's wife was present at the time, the title to the property was clearly in the prosecuting witness. This is well illustrated by the case of Ramey v. State, 69 Okla. Cr. 257, 101 P. 2d 856, cited by defendant, where the property belonged to Chester Perkins, but was in the possession of W. H. Cooper, in whose pasture the property was located at the time of the theft. The information alleged the theft from Chester Perkins, the real owner of the property, and this allegation was upheld.

See, also, Alexander v. State, 66 Okla. Cr. 5, 89 P. 2d 332.

The contention that the corpus delicti was not proven cannot be upheld. It has often been announced by this court that the corpus delicti may be proven by circumstantial evidence as well as by direct testimony, and the evidence here satisfies the rule. Mays v. State, 19 Okla. Cr. 102, 197 P. 1064; Capshaw v. State, 69 Okla. Cr. 440, 104 P. 2d 282.

The contention that the only evidence of corroboration of the testimony of the prosecuting witness consists in the extrajudicial confession of the defendant is not supported by the record. The evidence of the witness who saw defendant in the possession of a thousand-dollar bill and other bills of large denomination being of the exact kind lost by the prosecuting witness and at the time just after defendant quit the employment of the Ferguson Baking Company without informing them that he had intended to quit and his leaving the city of Tulsa and remaining away for a period of three years, together with other circumstances it is unnecessary to here relate, were facts to be considered by the jury in arriving at their verdict in this case.

The cases cited by defendant to sustain the propositions above referred to are: Gorum v. State, 60 Okla. Cr. 248, 63 P. 2d 765; Lake v. State, 59 Okla. Cr. 280, 57 P. 2d 1199; Edwards v. State, 58 Okla. Cr. 15, 48 P. 2d 1087; Buckmiller v. State, 55 Okla. Cr. 222, 28 P. 2d 597. The cases cited by the state are: Alexander v. State, 66 Okla. Cr. 5, 89 P. 2d 332; Beam v. State, 66 Okla. Cr. 14, 89 P. 2d 372; Ramey v. State, 69 Okla. Cr. 257, 101 P. 2d 856; Chesser v. State, 63 Okla. Cr. 84, 73 P. 2d 191; Henson v. State, 69 Okla. Cr. 273, 101 P.

2d 1060; Herren v. State, 69 Okla. Cr. 57, 97 P. 2d 96, 100 P. 2d 286.

Defendant's next assignment of error is that the court erred in giving instruction No. 8, which is as follows:

"You are further instructed that if you find from the evidence that the money was not taken from the place where it was being kept by the defendant himself, but that the defendant knew that the money was taken from the place of concealment, and obtained possession of the money knowing the source from which it came and with the felonious intent to deprive the owner thereof permanently, then such taking would amount to larceny."

This instruction should be considered in the light of the statute on principals and accessories, Oklahoma Statutes 1931, section 2902, O. S. A., Okla. Stats. 1941, title 22, sec. 432, which is as follows:

"The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, must be prosecuted, tried and punished as principals, and no additional facts need be alleged in any indictment or information against such an accessory than are required in an indictment or information against his principal."

Also instruction No. 9, which is upon the question of aiding and abetting, and Oklahoma Statutes 1931, sec. 1808, O. S. A. (1941), Title 21, sec. 172.

Under these statutes, which were covered by the instructions, to the effect that if the wife of defendant took this money from the place where it was hidden in the stove and the defendant accepted it from her knowing that the money had been taken from the place of concealment, and that it was the property of the prosecuting

witness, and he took it for the purpose and with the felonious intent to permanently deprive the owner thereof, he would be guilty of larceny. In view of the statutes above cited and the other instructions of the court, we do not find that the court erred in giving instruction No. 8 above quoted. The facts justified the giving of this instruction.

The next assignment of error is that the court erred in giving instruction No. 9. This instruction covered the statute with reference to one who aids or abets in the commission of a crime. It has heretofore been referred to, and we do not find the court erred in giving this instruction based upon this statute as applied to the facts in this case.

It is next contended that the court erred in giving instruction No. 11. This was an instruction on circumstantial evidence. It is not contended that an instruction on circumstantial evidence should not have been given under the facts, but it is contended that because the court instructed the jury that the state "relied for a conviction in part on circumstantial evidence" was an assumption on the part of the trial court that there was direct evidence against defendant, when in truth and in fact there was no direct evidence, and that this charge was therefore upon the weight of the evidence. From the facts heretofore stated it will readily be observed that the evidence in this case was both direct and circumstantial. The court was amply justified under the facts in giving this instruction.

Finding no error in the record which justifies a reversal of this case, the judgment and sentence of the district court of Tulsa county is affirmed.

JONES and DOYLE, JJ., concur.