**T. C. SMITH, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

No. A–12057.

Criminal Court of Appeals of Oklahoma.

Nov. 17, 1954.

W. J. Ivester, Altus, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

The plaintiff in error T. C. Smith, defendant below, was charged by information in the district court of Jackson county, Oklahoma, with the crime of larceny of a domestic animal, to wit, a bull calf weighing approximately 350 pounds, the personal property of W. H. McDoniel, with the unlawful, fraudulent and felonious intent to deprive the said W. H. McDoniel of said described property and to convert the same to the defendant's use and benefit, contrary to the provisions of Title 21, § 1716, O.S. 1951, allegedly committed on October 24, 1952. The defendant was tried by a jury convicted and the jury being unable to agree on the punishment left the same to be fixed by the trial court. Thereafter the defendant was sentenced to serve a term of 5 years in the State penitentiary, from which this appeal has been perfected.

The case was tried in the district court of Jackson county on August 12, 1953; judgment and sentence was entered on August 17, 1953, and this appeal was lodged herein on February 11, 1954. The defendant's brief was filed on July 23, 1954 and the brief for the state was filed on August 17, 1954. Thus the issues were made herein in said cause.

The facts briefly in this case are, that Mr. McDoniel, a neighbor of defendant T. C. Smith, had a red one-horn bull calf stolen on October 24, 1952. Mr. McDoniel last saw the bull calf while he was milking about 7:00 a. m. It was in his pasture. It was headed in the direction of some of the defendant's cattle in the defendant's pasture. Mr. McDoniel made a diligent search among the neighbors for his calf including an inquiry of the defendant, who informed him he had not seen the calf. Mr. McDoniel went further and advertised in the paper for his calf but did not learn of its whereabouts. Later it was learned that the defendant had loaded on the morning of October 24, 1952, at his place a red calf, which he took to the Granite, Oklahoma, frozen food lockers and which the locker company butchered for him. Mr. Whitehead who butchered the calf said he could not identify the calf. He did not recall whether it had one or two horns but he did say that it had at least one horn because he nicked his knife on it. The defendant declined to sell the hide to the lockers but lost the green hide on the way home. He explained to the officers it probably bounced off the trailer. One of the officers who testified was experienced in such matters and stated that green hides would not bounce around and it would be hard to lose, as described to him by the defendant. Mr. McDoniel, on further inquiry, was informed from a source, which does not clearly appear, that a one-horn calf head was in a dog pen in Granite, Oklahoma. McDoniel testified they hauled it up there from the lockers but it does not appear who hauled it or what the source of his information was, whether from some one connected with the lockers or some independent source. He discovered this head in the dog pen to be the head of his missing calf, and he so testified. This record further discloses the calf the defendant Smith took to the lockers was the right size and dressed out at about the right weight to be McDoniel's calf. The defendant did not testify but his wife testified in his behalf to the effect the calf was

her husband's. She did not know whether this calf had one horn or two or was a male or female. All she knew it was a red calf and was her husband's. This in substance constitutes the salient facts disclosed by the evidence in the trial court.

■ The defendant claims instruction No. 3 was erroneous and constitutes grounds for reversal. Instruction No. 3 reads as follows:

"You are instructed that the unexplained possession of recently stolen property found in the possession of one alleged to have stolen the same is a circumstance, which, if unsatisfactorily explained to the jury may be considered in determining the guilt or innocence of the person charged with the theft thereof."

Though instruction No. 3 was correct as an abstract statement of law, it is not applicable herein under the present state of the record. It was not applicable for the reason that the defendant claimed through his wife's testimony the calf which he took to the lockers was his own, and competent evidence to the contrary was not produced by the state. 52 C.J.S., Larceny, § 151, Note 72, p. 1001: "It is error to instruct the jury on possession of stolen property recently after the event where the evidence does not raise such an issue." State v. Hall, 105 Utah 151, 139 P.2d 228, on rehearing 105 Utah 162, 145 P.2d 494. The proof necessary to raise such an issue may be circumstantial as well as by direct evidence but the inference raised by circumstances must exclude every reasonable hypothesis except the defendant's guilt.

■ 52 C.J.S., Larceny, § 151, Note 3, p. 1003: "An instruction relating to the presumption arising from the possession of property recently stolen should not be given where the evidence fails to show that the property found in the possession of accused was stolen". Thomas v. State, 109 Ala. 25, 19 So. 403. The state's evidence connecting the defendant with the stolen calf, the head of which was found in a dog pen in Granite, Oklahoma, was very weak, if not a matter of surmise. If the state had sufficiently connected by competent evidence the defendant with the calf's head found in the dog pen identified as the McDoniel calf's head or, if the head found in the dog pen had been connected by competent evidence with the frozen food lockers in Granite, Oklahoma, then instruction No. 3 would have been proper. (We are at a loss to understand why such evidence was not supplied.) But since the defendant claimed ownership of the calf he took to the frozen food lockers it was further the trial court's duty to affirmatively instruct the jury on the defendant's theory that he claimed ownership of the calf which he took to the frozen food lockers. Alexander v. State, 66 Okl.Cr. 5, 89 P.2d 332; 36 C.J. 928, § 541, Note 32: "If accused claims to be the owner of the property which he is charged with stealing * * * the jury should be instructed upon the issue thus created; * * *." See also 52 C.J.S., Larceny, § 148. Landers v. State, Tex.Cr.App., 63 S.W. 557; Mattheus v. State, 32 Tex.Cr.R. 355, 23 S.W. 690. This the trial court did not do. Under this record the instruction standing alone was tantamount to a comment by the trial court on the evidence, in that the court in effect assumed, that the calf which the defendant Smith took to the frozen food lockers was a stolen calf, which was the very point at issue to be determined by the jury. The error in instruction No. 3 is therefore clearly apparent as was the trial court's failure to instruct on the defendant's theory, which together constitute grounds for reversal. We have been unable to find a case in Oklahoma squarely in point with this one but Stanley v. State, 94 Okl.Cr. 122, 230 P.2d 738, while factually not on all fours, indicates the duty of the trial court in the matter of instructions where the property allegedly stolen is claimed to be the property of the defendant. For these reasons this case must therefore be reversed and remanded for a new trial.

Though the evidence herein circumstantially points to the defendant's guilt it is weak on the point of his connection with the head of the stolen calf. The record disclosed that he took a red calf (whether a one horn, two horns or no horns, or wheth-

er a bull or heifer calf does not clearly appear) to the frozen food lockers on the day in question and had it slaughtered, which calf was about the right size and dressed out at about the right weight to be the complainant's calf. Moreover the record disclosed the defendant (maybe conveniently) lost the hide of this particular calf on his way home. Furthermore the skull of the calf with one horn, which was the right size as the one herein involved, was found in a dog pen identified positively as Mr. McDoniel's calf. But this evidence is not conclusive in connecting the defendant with the head found in the dog pen and the calf brought to the frozen food lockers by the defendant.

Since the case is to be retried we think the following observations are pertinent. The only connection shown between the head of the calf found in the dog pen and the slaughter pen at the frozen food lockers was that contained in Mr. McDoniel's testimony that it was, "up there where they hauled it off from the lockers, in a fellow's dog pen". It is apparent that this was mere hearsay. On retrial of this case the county attorney may be able to produce direct evidence in relation to the dog pen, with reference to its location to the slaughter pen of the frozen food lockers, and also as to who put the calf head in the dog pen, and whether the head in question came from the frozen food lockers slaughter pen, thereby strengthening the chain of circumstantial evidence connecting the defendant with the head found in the dog pen. Furthermore it is generally the practice of such institutions as frozen food lockers and kindred agencies to keep written records of identification identifying by description all livestock processed or purchased. Such records if available should be subpoenaed into court. Direct evidence that the head found in the dog pen came from the frozen food lockers slaughter pen would be a circumstance bridging the gap between the calf the defendant took to the lockers, and the head found in the dog pen, positively identified as that of the McDoniel calf. It is altogether possible that such proof may be produced by the county at-

torney on the retrial. This case is accordingly reversed and remanded for a new trial.

POWELL, P. J., and JONES, J., concur.