## EMMET GRAHAM v. STATE.

### No. A-2153.   Opinion Filed October 14, 1915.

#### (152 Pac. 136.)

1.  **VERDICT—Evidence—New Trial.** It is well settled that this
    court will not disturb the verdict on account of the evidence
    when there is evidence to support it. The converse rule is equally
    well settled that it is not only the province, but the duty of the
    court to set aside such verdict when it is contrary to the evidence,
    or when there is no evidence to support it.

2.  **LARCENY—Possession of Stolen Property—Effect as Evidence.**
    The possession of stolen property recently after the larceny, may
    or may not be an incriminating circumstance, whether it is or
    not depends upon the facts and circumstances connected with
    such possession; and where the testimony for the state standing
    alone raises a presumption of fact in favor of an innocent posses-
    sion and there is nothing in it from which the jury may legiti-
    mately infer a felonious taking, the evidence is insufficient
    to sustain a conviction. And where the defendant's explanation
    that he bought the cattle is undisputed, and is supplemented by
    the testimony of as many witnesses as the court would permit to
    testify as to his good character and honesty, the law will presume
    in behalf of innocence. It supposes legality rather than crime.

*Appeal from District Court, Stephens County;*
*J. T. Johnson, Judge.*

Emmet Graham, was convicted of cattle stealing and appeals.
Reversed.

*Bond & Sandlin* and *J. B. Wilkerson* and *Hainer, Burns
& Toney,* for plaintiff in error.

*Chas. West,* Atty. Gen. and *C. J. Davenport,* Asst. Atty.
Gen., for the State.

DOYLE, P. J.  The plaintiff in error was convicted on an
information wherein he was charged with the larceny of twenty
head of cattle, the personal property of H. S. Gross, and his
punishment fixed at five years imprisonment in the penitentiary.
From the judgment rendered on the verdict an appeal was taken

by filing in this court on December 23, 1913, a petition in error with case-made.

A substantial statement of the evidence is as follows:

H. S. Gross testified that he lived twelve miles east of Duncan; that on or about the 3rd day of February twenty head of his cattle were taken from his pasture; that with Mr. Adams he tracked the cattle into and out of the defendant's pasture and on through the town of Doyle and into the town of Marlow; that the tracks showed that one man on horse back drove the cattle to the defendant's pasture and that two men on horse back drove the cattle into Marlow. That when he arrived at Marlow he found that the cattle had been shipped to Wichita in the defendant's name. That he saw Jesse Graham and told him he wanted to see Emmet and Jesse telephoned to the defendant and he came to town; that he told the defendant about his cattle being taken, and they were "Three Diamond stuff," and the defendant said "Yes, I have handled fourteen head of "Three Diamond stuff," and that he had bought the cattle and showed the stub of a check, saying:

"If the cattle are yours, I would just as soon pay you as pay the other fellow," that he wanted the right man to have the money, and would like to have a few more days to find out something about the check; that he wanted to stop the payment of the check, and that he would turn over his team and buggy to witness until he got it straightened out. That three or four days later he paid witness three hundred and fifty dollars by check on the bank at Marlow.

Walter O'Quinn, testified that he lived nine or ten miles from Marlow, and saw the defendant driving a bunch of cattle by his place about the time some cattle were stolen from Mr. Gross; that he often saw the defendant driving cattle.

Elmer Lowe testified that he lived eleven miles from Marlow, and saw the defendant about the time Mr. Gross's cattle were stolen driving a bunch of cattle; paid no particular attention to the defendant, because he had noticed him handling cattle around

there for five or six years. That it was about noon when he saw him.

The defendant as a witness in his own behalf testified that he was twenty-six years old; had lived in that community all his' life; that he bought the cattle in question from H. D. Wilson, and paid him three hundred and five dollars for them, and shipped them to Jones Brothers at Wichita; that he left his place eighteen miles from Marlow and drove them there that day; that the next day in answer to a telephone call from his brother Jesse he went to Marlow and met Mr. Gross who told him he had lost some cattle and that his brand was "Three Diamond Slash," and he told Mr. Gross that he had shipped fourteen head of that brand; that he had bought from H. D. Wilson; and Mr. Gross said all he wanted was pay for the cattle and he told him if he could get the check back he would pay him. That he went to see Wilson and told him that there was a fellow in Marlow claiming the cattle that he had bought of him; that Wilson got mad and said that he had bought part of the cattle and raised the rest of them. The court sustained the state's objection to any further testimony as to what Wilson said.

Defendant further testified that he settled with Mr. Gross by paying him three hundred and fifty dollars, and that Wilson paid him two hundred and gave him a note for one hundred dollars.

The defendant introduced five character witnesses.

R. J. Deets testified that he was pastor of the M. E. church South at Duncan for three or four years and knew the general reputation of the defendant as to being a law abiding citizen and that "No young man in that community has a better reputation than Emmet Graham."

To the same effect was the testimony of R. L. Montgomery.

Mr. Atchison testified that he was in the banking business at Marlow and was a farmer and had known the defendant seventeen years, and knew his general reputation in that community as being a law abiding citizen and that it was good.

The testimony of Mr. Liny and Mr. Gann was to the same effect.

Thereupon the court announced that he would limit the number of character witnesses to five, to which ruling the defendant excepted.

The motion for a new trial on the ground of newly discovered evidence was supported by the affidavit of E. L. Gilstrap, to the effect that on the morning of February 3rd, he met Harry B. Wilson driving fourteen or fifteen head of cattle; that he knew said Wilson and asked him what he was doing up there; that affiant did not know Emmet Graham until after his conviction. Also the affidavit of Ethel Wilson to the effect that she resided two miles north of Kilgore, in Grady county, and knew Harry Wilson for several years and in the early part of February he was at her house and showed her a check signed by Emmet Graham; that said Wilson had bought a yearling from affiant and owed her for the same, and he told her if she would cash the check, he would pay her what he owed her. That affiant is in no way related to the defendant or said Wilson. The defendant's affidavit was to the effect that he did not become acquainted with the said E. L. Gilstrap until after his conviction, and that he had no knowledge whatever of the facts stated until after his conviction, and he could not with reasonable diligence have produced the said evidence on his trial.

The main question presented is the sufficiency of the evidence to support the verdict and judgment. It is well settled that this court will not disturb the verdict on account of the evidence when there is evidence to support it. The converse rule is equally well settled that it is not only the province, but the duty of the court to set aside such verdict when it is contrary to the evidence, or where there is no evidence to support it.

Our Procedure Criminal provides that a new trial shall be granted, "When the verdict is contrary to law or evidence."

Section 5937 Rev. Laws.

Under this provision the responsibility of determining whether or not there has been adduced before the jury a sufficient amount of legal and competent evidence to render it safe to allow the verdict to stand is imposed upon the trial court in

Statement of Facts.

the first instance, and on appeal upon this court. The perform-
ance of this duty on the part of the court is the exercise of
judicial discretion and judgment as to the sufficiency of the
evidence to overcome the legal presumption of innocence to which
every one is entitled who is put upon his trial for an alleged
offense.

The only evidence offered by the state tending to incrim-
inate the defendant was the possession of the cattle alleged to
have been stolen, and there is no conflict between the testimony
of the prosecuting witness and that of the defendant as to the
fact that the defendant, who the evidence shows had been engaged
in the purchasing of cattle for several years, purchased the cattle
from one Wilson. The possession of stolen property by the
defendant recently after the larceny, if unexplained is a circum-
stance from which the jury may infer his complicity in the
larceny. In determining the weight to be attached to this circum-
stance as evidence tending to prove guilt, the jury should take
into consideration all the facts and circumstances connected with
such possession, and their relation to the other evidence in the
case. Where the possession was open and there was no conceal-
ment, and where the testimony for the state, as to the possession
standing alone raises a presumption of fact in favor of an inno-
cent possession and there is nothing in it from which the jury
may legitimately infer a felonious taking, then a verdict of guilty
cannot be sustained, and it would be the duty of the court to set
it aside.

Against the one fact of possession the defendant's explana-
tion that he bought the cattle is undisputed, and his explanation
is supplemented by the testimony of as many witnesses as the
court would permit to testify as to his good character and
honesty. Under such circumstances the law will presume in
behalf of innocence. It supposes legality rather than crime.

When we recall the presumption that the law always indulges
in as to the innocence of the defendant, and the necessity of
establishing his guilt beyond a reasonable doubt, and the force
and effect, which in a case of this kind, should have been given

to the evidence of good character, we think it would have been a proper exercise of the power vested in the trial court to have advised the acquittal of the defendant, upon the ground that the evidence was insufficient to sustain a conviction.

The charge of the court consisting of seven instructions makes no reference as to the law of circumstantial evidence or evidence of good character, and as to the law in respect to the possession of property recently stolen, the only reference is as follows:

"No. 4. You are instructed if you believe from the evidence or entertain a reasonable doubt as to whether or not the defendant did purchase said cattle, you should resolve any such doubt in favor of the defendant and acquit him."

We think this instruction subject to the criticism made, that it requires the jury to believe from the evidence that the defendant was innocent before finding him not guilty, thus in effect depriving the defendant of the presumption of innocence until the contrary is proved. However, no request for instructions was made and no objection was made or exceptions taken to the instructions given.

Upon the whole case we are without doubt as to the propriety of reversing the judgment, and we are of the opinion that the evidence is not sufficient to support the verdict. The judgment is therefore reversed.

FURMAN and ARMSTRONG, Jb., concur.