## JIM HART v. STATE.

No. A-8908.   Aug. 9, 1935.
(48 Pac. [2d] 337.)

Brown & Brown, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, J. The information in this case charged defendant Jim Hart jointly with his brother John Hart and others, with having on the 26th day of April, 1934, broken into and entered a storehouse located in the city of Marietta with intent to steal certain corn, the personal property of Paul Miller.

Upon his separate trial the jury returned their verdict finding defendant guilty of burglary in the second degree, but were unable to agree on the punishment. A motion for a new trial was filed, presented, and overruled. On November 15, 1934, the court pronounced judgment and sentenced defendant Jim Hart to imprisonment in the penitentiary for a term of three years and six months. From the judgment, he appeals.

The information is in the ordinary and often approved form, and hence it is not necessary to reproduce it in this opinion.

The only ground relied upon for a reversal of the judgment is that the evidence is not legally sufficient to support the verdict.

The following facts are undisputed or fairly shown by the evidence: Paul Miller had a carload of shelled corn

stored in a warehouse near the depot in Marietta. The corn was sacked, 100 pounds to the sack. On the night of April 26, 1934, the two locks on the door of the warehouse were broken off and it was entered and about 200 sacks of this corn stolen. The breaking and entering and the taking of the corn was discovered by Mr. Miller the morning of April 27th. The sheriff of Love county was immediately notified and an investigation of the premises was at once made. It appeared that the corn taken out was hauled away in a truck or trucks. Corn had spilled where it had been loaded and along the road where it had been hauled, and by following the spilled corn, Miller and the officers trailed the same to the house of defendant John Hart, where about 60 sacks of the stolen corn were found, and as some spilled corn led away from defendant John Hart's, this was followed to the home of defendant Jim Hart, about a half mile south, where another 60 sacks were found about 10 o'clock that morning. This corn was positively identified by Mr. Miller as his property, and was taken possession of by the sheriff and returned to Paul Miller. No effort was made by defendant Jim Hart to recover it although he claimed he bought this corn.

As a witness in his own behalf, Jim Hart testified:

"I live seven miles south of Marietta and a quarter east. My brother lives a quarter north of me. I did not know where the Miller warehouse was. I did not break and enter that warehouse. I bought the corn. Two boys came there, one was named Joe Woods from Gainesville. They drove there in a truck and Woods got out and asked me if I wanted to buy some corn, I told him I needed some. He said, 'This fellow out there has got some corn and he will sell it to you if you will buy what he has. He will sell it to you at a sacrifice if you will buy all of it.' I told him I didn't know, and so I walked out there and he said if I would take it all that he would sell it at a dollar a sack.

There were 60 sacks and I paid $60 for it and they drove off. Then I noticed Jack Coker sitting out there on the well curb." On cross-examination he stated: "Joe Woods had the corn but I paid the other fellow. He had a Chevrolet truck with a rocking-board trailer on it. They left my place between seven and seven-thirty. The sheriff told me he would have to hold the corn until the case was settled. I went over to Gainesville to find Joe Woods and the other man and they told me he was dead."

At the close of the evidence, there was a motion for a directed verdict of acquittal for the reason that the evidence was insufficient to warrant a conviction.

It is insisted that there was no proper or sufficient evidence connecting this defendant with the burglary or taking of the corn. We think this contention is without substantial merit.

It has been held by this court, following the rule recognized by the courts generally, that mere possession of property recently stolen is not sufficient to convict the possessor of a larceny of it. Shaw v. State, 13 Okla. Cr. 511, 165 Pac. 617; Grahm v. State, 12 Okla. Cr. 84, 152 Pac. 136. When, however, this fact is supplemented by other facts inconsistent with the idea that the possession is honest, it then becomes a question of fact for the jury to determine.

Where the charge is burglary, if property taken from the owner is soon thereafter found in possession of the person charged with the burglarious entry, proof of this fact, together with circumstances showing guilty conduct, is presumptive evidence, not only of the larceny, but also that he made use of the means by which the property was taken from the owner.

Burglary is one degree removed from larceny; but when the facts in evidence warrant the finding of the lar-

ceny, and the surrounding circumstances are such as to show that the larceny could not have been committed without the burglarious entry, the evidence is sufficient to warrant the finding of the burglary also.

In order to establish defendant's guilt, it was not necessary that any of the witnesses should have seen him or his codefendants in the vicinity of the warehouse about the time the burglary was committed. It rarely happens that perpetrators of an offense, committed in the manner here proven, can be shown by witnesses who saw and recognized the defendants in the act, and resort must therefore ordinarily be had to circumstantial evidence.

The jury evidently did not believe the explanation made by defendant as to how he came into possession of the stolen corn.

The rule repeatedly announced by this court is that it has no power to reverse a judgment of conviction upon the ground that the verdict is not supported by the evidence, unless there is no substantial evidence tending to show defendant's guilt, or the evidence fails so far to support the verdict that the fair inference is that the jury must have acted from passion or prejudice. We have set forth a substantial statement of the material testimony introduced by the state, and it is apparent that there is substantial evidence tending to show defendant's guilt, and we think it is amply sufficient to support the verdict of the jury.

Accordingly, the judgment is affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.