### RAYMOND K. WRIGHT v. STATE.

No. A-10182. Oct. 6, 1943.
(142 P. 2d 128.)

394

 

Homer Cowan, of Norman, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, P. J. The defendant, Raymond K. Wright, was charged by information filed in the district court of Cleveland county with the crime of burglary in the second degree, was tried, convicted and sentenced to serve three years in the State Penitentiary, and has appealed.

The chief contention of the defendant is that the evidence is insufficient to sustain the verdict of guilty. The case against the defendant was wholly circumstantial.

Mr. and Mrs. D. R. Stogner and their 16 year old daughter lived at 303 East Frank street in Norman. Mr. Stogner, in the year 1940, was a highway patrolman stationed at Kingfisher, Oklahoma. In the latter part of November, 1940, Mrs. Stogner went to Illinois to see a sister who was seriously ill, leaving the 16-year-old daughter living with one of their neighbors.

The daughter testified that she was at her home practicing the piano between the hours of 4 and 5 p. m. on December 3, 1940. That she left about 5 p. m. and went over to the neighbor's house where she was living while

her mother was away from town. That when she left all of the doors and windows to the house were closed. That she returned shortly after 7 p. m. and found the front door open. Upon entering the house she saw that a large amount of clothing, bed linens, radio, and other personal property had been taken. She immediately notified the chief of police.

Gerald Holman, principal of the Windsor school, testified that shortly after dark on December 3, 1940, he was working at the school building when one of his boys entered and told·him he had seen a suspicious looking character carrying a bundle across his back in the rear of the Windsor school, which is by the Stogner house on Frank street. That he and the boy ran out of the school building and got into the principal's car and drove around in front of the house. That just as they got there the car started up and they followed it for two or three blocks. That it was an old model car with a Texas tag. That he gave the chief of police the license number.

W. W. Jennings, chief of police, testified that he was notified about 7:30 p. m. by Doris Stogner of the burglary at the Stogner home. That shortly thereafter Mr. Holman reported seeing the suspicious looking car with a Texas license near the Stogner home and gave him the license number. That he called the police department in Dallas, Tex., and gave them the tag number which Mr. Holman had given him. That three or four days later he was notified by the police department that they had arrested the owner of the automobile and were holding him in the Dallas jail. That he went to Dallas after the defendant, who was the person who had been arrested by the Texas policemen. That he brought the defendant and a large quantity of clothes, which were in the defendant's automobile at the time of his arrest, back to Norman with him.

That some of the clothes belonged to the defendant and his wife and some of them were identified by Mrs. Stogner after her return from Ilinois as part of the personal belongings of the Stogners. When he was called by the police department in Dallas he received information that the defendant had stated he secured the clothing from the codefendant, James Johnson, who lived near Bethany, Okla. That before he went to Dallas after the defendant he went to Bethany to Johnson's house and there recovered the radio and some other personal property which was identified as belonging to the Stogners.

Two police officers from Dallas, Tex., testified to substantially the same facts. They testified that they received information from the chief of police at Norman concerning an automobile with Texas license number 313—223. That they made a check to see who the license had been issued to and they learned it was issued to Raymond K. Wright, 3523 Kenilworth street. That a pick-up was broadcast two or three days later at the home of his mother-in-law. That the care with the Texas license number given them by the Norman police chief was parked in the driveway and was full of clothing and other personal belongings which were seized by the officers and transported to the jail at Dallas along with the defendant. That the defendant said that he had gotten the merchandise from Jim Johnson, his brother-in-law, at Oklahoma City and they relayed this information to the chief of police at Norman.

There was other testimony offered by the state, but it was cumulative to the testimony hereinabove outlined.

The defense offered was in the nature of an alibi. The wife of the defendant and several other parties testified that for a few weeks prior to December 3, 1940, the defendant had been working at some tourist courts near

Bethany in Oklahoma county. His brother-in-law and co-defendant, James Johnson, also lived near there. That on the evening of December 3, 1940, the defendant, his co-defendant and another boy went possum hunting. That they came back early in the evening with one possum and showed it around to several people in the neighborhood and then left for a second hunt, returning a few hours later with two possums and one skunk. That on December 4th, the following morning, they paid up their rent and left for Dallas, where defendant's mother-in-law lived and where defendant and his wife formerly resided.

The defendant did not testify. His wife testified that the dresses in their possession, which the officers claimed were stolen, had been given to her by Mrs. Johnson, who was her sister, before they left Oklahoma City.

Mrs. Johnson, wife of the codefendant, testified concerning the possum hunt. She further testified that a hitchhiker by the name of Trammel came by their place on the morning of December 4th and sold her husband the dresses, a radio and some other personal property. That the dresses which she gave to Mrs. Wright were obtained by her husband from Trammel.

In determining the sufficiency of the evidence to sustain the conviction, we have the following established circumstances:

(1) A burglary of the Stogner home was committed between the hours of 5 and 7 p. m. on December 3, 1940.

(2) A car with a Texas license number, which was later identified as belonging to defendant, was seen in front of the house and a man with a bundle on his back was seen going to the car shortly after dark, which was about 6 o'clock p. m. on December 3, 1940.

(3) The defendant was arrested in Dallas, Tex., three days after the burglary, having just driven from Oklahoma City. He was in possession of the car with the identical Texas license number of the car used in the burglary.

(4) He had possession of some of the property which was taken in the burglary.

(5) His explanation as to where he had received the property led to a search of the Johnson premises where a great deal of the remaining property was recovered.

(6) For several days prior to the burglary the defendant had lived near Oklahoma City, about 25 miles from the Stogner home. He paid his rent and left there the day following the burglary.

We think the facts shown by the state were sufficient to make a prima facie case against the defendant. His proof of the alibi raised an issue which required submission to the jury. We feel bound by the findings of the jury on this question.

In the case of Herren v. State, 69 Okla. Cr. 57, 97 P. 2d 96, 100 P. 2d 286, it is stated:

"In a prosecution for burglary, where it is shown that there was a burglarious entry and that property was stolen, evidence of possession by defendant of the stolen property is admissible as a circumstance tending to prove that defendant was guilty of the burglary.

"Evidence of possession of the stolen property by defendant soon after the burglary was committed, when supplemented with other facts inconsistent with the idea that the possession was honest, is sufficient to sustain a conviction for burglary.

"Where the evidence is circumstantial, if there is substantial evidence which if believed by the jury preclude

every reasonable hypothesis of the innocence of the defendant, a verdict of guilty will not be disturbed."

In the body of the opinion, on rehearing, it is stated:

"It is only where there is a total failure of substantial evidence of the elements or some one element of an offense that this court on appeal is permitted to reverse a conviction on the ground that the evidence is insufficient to sustain it."

The facts in that case were not as strong as the facts in the instant case. The defendant was found in possession of an automobile with two of the automobile casings stolen in the burglary on the rear wheels. With him at the time of his arrest was his brother, Earl Herren, and the shoes worn by Earl Herren were identified as having made the same peculiar tracks as were found at the scene of the burglary. The defendant claimed that he had bought the casings from a man in Oklahoma City. In disposing of the defendant's contention that the evidence was insufficient to support the verdict, Judge Doyle stated:

"In the case of Hart v. State, 57 Okla. Cr. 372, 48 P. 2d 337, 338, we said:

" 'It has been held by this court, following the rule recognized by the courts generally, that mere possession of property recently stolen is not sufficient to convict the possessor of a larceny of it. Shaw v. State, 13 Okla. Cr. 511, 165 P. 617; Graham v. State, 12 Okla. Cr. 84, 152 P. 136. When, however, this fact is supplemented by other facts inconsistent with the idea that the possession is honest, it then becomes a question of fact for the jury to determine.

" 'Where the charge is burglary, if property taken from the owner is soon thereafter found in possession of the person charged with the burglarious entry, proof of this fact, together with circumstances showing guilty conduct, is presumptive evidence, not only of the larceny, but

also that he made use of the means by which the property was taken from the owner. * * *

" 'In order to establish defendant's guilt, it was not necessary that any of the witnesses should have seen him or his codefendants in the vicinity of the warehouse about the time the burglary was committed. It rarely happens that perpetrators of an offense, committed in the manner here proven, can be shown by witnesses who saw and recognized the defendants in the act, and resort must therefore ordinarily be had to circumstantial evidence.' "

See, also, Spann v. State, 69 Okla. Cr. 369, 103 P. 2d 389; Chesser v. State, 63 Okla. Cr. 84, 73 P. 2d 191; Shields v. State, 32 Okla. Cr. 344, 240 P. 661.

In Spann v. State, supra [69 Okla Cr. 369, 103 P. 2d 390], it is stated:

"If there is a conflict in the evidence or different inferences may be drawn therefrom, it is the province of the jury to weigh the evidence and determine the facts; and their determination should not be interfered with unless it appears that such determination was not sustained by sufficient evidence or was influenced in some way by passion or prejudice."

After a consideration of this record, it is our conclusion that the evidence is such as to require submission to a jury, and its finding on such disputed questions of fact will not be disturbed.

Although the brief of the defendant is devoted to the contention that the evidence is insufficient to sustain the verdict, he made the further assignment of error that the court erred in admitting hearsay evidence by the officers that they made a check of the records to determine who was the owner of the automobile bearing the license number given them by the Norman police chief. Counsel's contention that this evidence was hearsay is correct. But

the error in allowing the admission of this evidence was cured by counsel's cross-examination of the witness in which counsel admitted the car belonged to defendant and by the further testimony of the wife of the defendant that the car belonged to the defendant.

We find no material error in the record and the judgment of the district court of Cleveland county is accordingly affirmed.

BAREFOOT, J., concurs. DOYLE, J., absent.