**Marshall George CUMMINGS, Jr., Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–77–510.**

Court of Criminal Appeals of Oklahoma.

May 3, 1978.

Richard A. Hoffman, Asst. Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Charles Helm, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Appellant, Marshall George Cummings, Jr., hereinafter referred to as defendant, was charged in the District Court, Tulsa County, Case No. CRF–76–2857, with the offense of Attempted Robbery by Force, in violation of 21 O.S.1971, § 791 and § 42. The case was tried to a jury, and a guilty verdict was returned. Punishment was assessed at ten (10) years' imprisonment. From judgment and sentence defendant has perfected a timely appeal to this Court.

Bonnie E. Rose, of San Antonio, Texas, testified that while shopping with her husband and their daughter, Mrs. W. E. Atherton, in Tulsa, Oklahoma, at about 1:30 p. m. on October 14, 1976, the defendant knocked her down and attempted to steal her purse. Mrs. Rose stated that she retained her purse, although the defendant dragged her across several feet of pavement in an attempt to get it from her. The defendant fled to a waiting car driven by another person.

Mrs. Atherton testified that she observed the defendant knock down her mother in an attempt to steal her purse and then flee to a car. Mr. Rose, present during the incident, did not testify.

The defendant's first witness was Danny Buzkirk, who stated that he worked at two jobs, one as manager of Daylight Donuts in Tulsa and the other as a part-time cook in Jim's Jumbo, also located in Tulsa. The witness stated that on October 14, 1976, he lived in a trailer with the defendant, Rick Buzkirk, the witness' brother, and Charles Johnson. At 11:00 a. m. on that date, the witness drove the defendant to a Derby gasoline station where the defendant worked to pick up his pay. After leaving there, the witness drove the defendant to the Admiral traffic circle where he left him, and did not see him again until 4:30 p. m.

Rick Buzkirk testified that he was a construction worker and that he lived with the defendant, his brother Danny Buzkirk and Charles Johnson. The defendant had not been living there very long and, conse-

quently, the witness did not know him well. The witness stated that on October 14, at 11:00 a. m., his brother Danny drove the defendant to the Derby gasoline station where the defendant was employed. The defendant returned about 11:40 a. m., and they remained in the trailer all afternoon. At 6:30 p. m., they left and went to a beer parlor where they spent much of the evening.

The defendant testified that on October 14, at 11:00 a. m., he was driven by Danny Buzkirk to the Derby station in order to pick up a severance paycheck. The check had not come, and the defendant returned to the trailer where he spent the afternoon. The defendant admitted pleading guilty to four prior felonies, stating that he pled guilty because he was guilty. He further stated that he pled not guilty in the instant case because he was, in fact, not guilty.

The defendant's first assignment of error is that the trial court erred by permitting the defendant to represent himself when there was not a knowing and intelligent waiver of the right to counsel. The defendant asserts·that the lack of a knowing and intelligent waiver is evidenced by the fact that he conducted his entire cross-examination of the State's witnesses in the first person.

The State urges that although this was an "unfortunate occurrence" it could not be foreseen, and whether a defendant makes an intelligent waiver must be determined prior to trial and not during trial.

■ A defendant, of course, has an absolute right to represent himself, provided that his waiver of the right to counsel is made "knowingly and intelligently." *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The record in the present case indicates that the defendant was fully advised of his rights. We note also that the trial was conducted, for the most part, by the Public Defender appointed to represent the defendant, with the defendant himself conducting only the voir dire and part of the cross-examination of the State's witnesses. The fact that the defendant conducted his cross-examination of the State's witnesses in the first person only illustrates that the chance the defendant took when he elected to represent himself is the happenstance which occurred— the lawyer had a fool for a client. There was no error.

The defendant's second assignment of error is that the trial court erred in allowing the State to cross-examine the defendant with regard to a certain written statement given by the defendant's co-defendant in another case.

■ The statement itself has not been included in the record, and so this Court is unaware of its precise contents. However, we are of the opinion that the defendant was properly cross-examined with regard to it. On direct examination it was made to appear that the defendant pled guilty to the robbery because he was guilty and for no other reason. It was therefore permissible for the State to show that there were in fact other reasons, besides the defendant's honesty, which caused him to plead guilty. It is always permissible to cross-examine a witness to determine his credibility, or to undermine it. See, *Chase v. State*, Okl.Cr., 541 P.2d 867 (1975).

The defendant also asserts that cross-examining defendant with regards to the statement had the effect of introducing evidence of other crimes, contra to the well recognized rule barring such evidence. See, *Roulston v. State*, Okl.Cr., 307 P.2d 861 (1957).

We agree that this was a side effect of the prosecutor's cross-examination. However, we are also of the opinion that no reversible error occurred. The defendant, during direct examination, admitted convictions for four felonies, including the robbery which was the subject of the hearsay statement of Michael Bish. It is therefore apparent that since the defendant admitted committing the robbery, no prejudice could flow from the fact that the jury was informed that the statement of Michael Bish concerned the defendant in that very same robbery.

Such is not the case, however, with the prosecutor's question concerning whether or not the defendant asked Michael Bish to supply him with an alibi. This Court is unaware of the precise contents of the statement as it was not included in the record, but a reasonable inference is that Bish's statement contained an allegation that the defendant had suborned perjury. The prosecutor thus succeeded in indirectly informing the jury of the contents of the hearsay statement. Such indirect solicitation of hearsay is error. *Washington v. State,* Okl.Cr., 568 P.2d 301, 308 (1977). Further, the hearsay was of the sort which implicated the defendant in a crime other than the one for which he was on trial, that is, subornation of perjury. Had the subornation occurred in connection with this case, then it might have been permissible to inform the jury of it, but even then it could not be accomplished through hearsay evidence.

The alleged subornation occurred in connection with another case, however. Taking the witness stand merely puts in issue the defendant's truth and veracity as a witness, not his character. Apparently, no conviction had occurred as of the time of this trial and, thus, the alleged subornation could not be used to impeach the defendant's truth and veracity as a witness. See, *Brown v. State,* Okl.Cr., 506 P.2d 1396 (1973), to which I dissented on other grounds. It was mere character impeachment, evidence of prior bad acts, and since the defendant had not first put his character in issue, it was improper for the State to do so. *Vanderpool v. State,* Okl.Cr., 501 P.2d 871 (1972) and *Roulston v. State,* supra. The evidence was doubly improper, because above, it was accomplished through the indirect elicitation of hearsay evidence.

We hold, however, that because of the strength of the State's case and because the defendant admitted to four other felony convictions, that any error which occurred was not sufficient to cause a reversal of this conviction. Title 20 O.S.1971 § 3001.

The defendant's third assignment of error is that the trial court erred by not suppressing the pretrial identification of the defendant because of absence of counsel at the lineup. The record reflects that the lineup occurred on October 21, and that the information was not filed until October 26. This being so, then the defendant was not entitled to counsel at the lineup. See, *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), and *Carson v. State,* Okl.Cr., 529 P.2d 499 (1974).

The defendant's final assignment of error is that the prosecutor used prejudicial tactics. The defendant contends that when the prosecutor sought to cross-examine him with the statement of Michael Bish, he removed the document from his file "in a manner reminiscent of a musketeer unsheathing his sword to do battle with enemies of the king." Further, complaint is made that the prosecutor carried the document in front of the jury and had it marked by the reporter, knowing full well that it could not be introduced into evidence. The defendant contends that these "showboat activities" combined with the defendant's own strenuous objections could only cause the jury to wonder about the contents of the document, and lead them to conclude that it was indicative of defendant's guilt.

The defendant complained to the court of "showboating" at the time. The court stated, "The Court reflects I saw nothing that indicated showboat activity whatsoever. I don't know how Counsel defines showboat activity. I sure didn't see any in the Court Room in this case."

When dealing with a contention such as this, it is obvious that a trial court is in a much better position to gauge actions and their impact upon the jury than is an appellate court. We are thus inclined to accept the trial court's determination that no "showboating" occurred. In *Aderhold v. Stewart,* 172 Okl. 72, 46 P.2d 340 (1935), the Oklahoma Supreme Court stated under circumstances similar to this case the trial court was in a better position to gauge the effect upon the jury, and the appellate court would not overrule its decision absent an apparent abuse of discretion. In the

present case we are of the opinion that no abuse of discretion is apparent and find the defendant's fourth assignment of error to be without merit.

While the errors cited by defendant may not be sufficient to cause a reversal of this conviction, there is little doubt that they are sufficient to cause a modification of the sentence imposed in this case. It is therefore ordered that the sentence imposed herein shall be modified from ten (10) years' imprisonment to five (5) years' imprisonment; and as *MODIFIED* the judgment and sentence is *AFFIRMED.*

BUSSEY, P. J., concurs in results.

CORNISH, J., concurs.