Donna Lea ROGERS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–84–426.

Court of Criminal Appeals of Oklahoma.

July 1, 1986.

Rehearing Denied Aug. 6, 1986.

Thomas Purcell, Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Donna Lea Rogers, was convicted of Shooting With Intent to Kill, Case No. CRF–83–571, and Robbery With Firearms, Case No. CRF–83–572, for which she received concurrently running sentences of twenty-five (25) years' imprisonment and ten (10) years' imprisonment, respectively, and she appeals raising six assignments of error.

Briefly stated, the State's main witness, Vali Zare, testified, by transcript,[1] that he was working at Little Jim's Grocery Store in Norman, Oklahoma, on June 16, 1983, that at about 1:20 A.M., a woman, whom he later identified in a photographic lineup as appellant, entered the store, placed a six-pack of beer on the checkout counter, pulled a very small white handled gun from her pocket and demanded all the money in the register. He further testified that after he gave her the money, she forced him, at gunpoint, to the back of the walk-in cooler, ordered him to lie down, shot him in the back of the head, and left the store.

After reading a newspaper account of the robbery, Lyndol Cole, the owner of the Magic Pawn Shop in Norman, Oklahoma contacted the police and told them that on June 14, 1983, he had sold a small white handled .22 caliber revolver to Teresa Davis, a black woman, and that she was accompanied by another black woman on the day of the purchase. He gave the police a detailed description of both women and later identified the two from photographic lineups provided by the Norman Police Department.

The appellant, testifying on her own behalf, admitted having gone to the pawn shop with codefendant Davis on June 14, 1983, however, she denied any involvement in either the robbery or shooting. As her alibi, she testified that after leaving the pawn shop, a friend of hers, Rosalind Harper, took her to Guthrie, Oklahoma, and that she did not return to Norman, Oklahoma until June 20, 1983. Laura Austin, a legal intern in the Cleveland County District Attorney's office, testified that she was present during a prior hearing in which the appellant testified that T.J. Robinson and his daughter took her to Guthrie. Officer Jim Parks, of the Norman Police Department, the arresting officer, testified that he saw the appellant walking down Robinson street in Norman, Oklahoma on the evening of June 15, 1983.

### I

In her first assignment of error, appellant argues that, as an indigent, she had a constitutional right to a state-appointed psychiatrist and that the trial court foreclosed her defense of insanity by overruling her pretrial motion for a psychiatric examination. We do not agree.

Appellant relies on *Ake v. Oklahoma*, —— U.S. ——, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), wherein the United States Supreme Court held, that when an indigent is able to make a preliminary showing to the trial judge that his sanity at the time of the offense is likely to be a significant factor at trial, he is entitled, under the Due Process Clause of the Fourteenth Amendment, to access to a state-appointed psychiatrist to examine him and to assist in evaluation, preparation, and presentation of his defense. In *Ake*, the Supreme Court enumerated factors which demonstrated that Mr. Ake's sanity was likely to be a significant factor in his defense.

The case at bar differs from *Ake*, in several ways. First, although appellant had a history of residing in mental institutions for numerous years, she did not raise the insanity defense at trial, or even attempt to offer one iota of evidence relating to such defense. Instead, she chose to

---

**1.** Since Mr. Zare was unavailable at trial, the trial court permitted the reading of pertinent portions of Mr. Zare's testimony at the preliminary hearing of August 22, 1983, and the prior trial of September 14, 1983, which resulted in a mistrial.

foreclose the possibility of an insanity defense by electing to rely on an alibi defense, when she testified that on the day of the robbery and shooting she was in the city of Guthrie, Oklahoma. Second, the court minute reflects that following an evidentiary hearing, the trial court found there was no doubt that appellant was competent to stand trial and able to assist her counsel. Third, the trial judge had numerous opportunities to observe appellant's demeanor, since she made several court appearances, yet there is no record of bizarre behavior by appellant.

■ Under Oklahoma law, notwithstanding an indigent's constitutional rights, there is an initial presumption of sanity, which remains until the defendant raises, by sufficient evidence, a reasonable doubt as to his sanity at the time of the crime. If the issue is so raised, the burden of proving the defendant's sanity beyond a reasonable doubt falls upon the State. *Rogers v. State*, 634 P.2d 743 (Okl.Cr.1981); *Richardson v. State*, 569 P.2d 1018 (Okl.Cr.1977). After carefully examining the record, we are persuaded that appellant failed to raise even a scintilla of evidence to remove the presumption of her sanity at the time of the offense; moreover, she also failed to demonstrate that the sanity would even be a factor at trial, as required by *Ake*. Therefore, we find no error in the trial court's ruling.

## II

■ As her second assignment of error, appellant maintains that the trial court improperly admitted hearsay by admitting portions of the transcript of Mr. Zare's testimony at the preliminary hearing of August 22, 1983, and at the prior trial of September 14, 1983 (which resulted in a mistrial). We do not agree. Prior testimony is not excluded by the hearsay rule if the declarant is unavailable and it was given at the same or another proceeding, provided the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by cross-examination. *See* 12 O.S.1981,

§ 2804(A)(5), § 2804(B)(1). We are satisfied that the testimony of Mr. Zare falls within these provisions. Also see *Rushing v. State*, 676 P.2d 842 (Okl.Cr.1984). The State informed the trial court that in spite of its efforts to procure Zare's attendance, Mr. Zare had unexpectedly been stranded in Chicago, Illinois without transportation and would not be present to testify as scheduled. We find the State's explanation in the record establishes Zare was unavailable as required by § 2804(A)(5). Additionally, the fact that Zare's testimony was given at appellant's prior trial and at her preliminary hearing satisfies the requirement of Section 2804(B)(1) that the testimony be given at "another hearing of the same or another proceeding." Lastly, appellant had the opportunity to "develop" the testimony, as per Section 2804(B)(1), since Zare underwent extensive cross-examination by appellant's own attorney in both proceedings. There was no error.

■ Similarly, appellant urges that the State's failure to subpoena Mr. Zare as provided by 22 O.S.1981, § 721 et seq., (Uniform Act to Secure Attendance of Witnesses From Without a State in Criminal Proceedings) constitutes a lack of "due diligence" and that therefore the prior testimony of Mr. Zare was improperly admitted into evidence. We disagree. In *Underwood v. State*, 659 P.2d 948 (Okl.Cr.1983), we held that merely failing to comply with the aforementioned Uniform Act does not alone constitute a lack of due diligence; the State must also fail to make a good faith effort to secure the witness. In the instant case, although the State did not utilize the Uniform Act, the record shows that the State tried to secure Zare's presence at trial by attempting to arrange for prepaid airfare through a local travel agency; by personally calling the airline in Kalamazoo, Michigan, after learning that a computer failed to show the ticket as "prepaid;" then by receiving Mr. Zare's assurance that he would pay the airfare himself; and by joining in the motion for a continuance after learning that Zare became stranded in Chicago, Illinois because the airline in Chicago

refused to accept a personal check for the ticket. Mr. Zare had given a different airline a personal check to get from Kalamazoo to Chicago. We find the State exercised good faith and due diligence in attempting to secure Zare for trial, even though they were unsuccessful. We cannot say that the trial court abused its discretion in allowing the use of the transcripts in the instant case. *Dilworth v. State,* 611 P.2d 256 (Okl.Cr.1980).

### III

In her third assignment of error, appellant argues that the trial court abused its discretion by denying a motion to continue. The record reveals that on the second day of trial, in lieu of granting the motion, the trial court allowed Zare's prior testimony to be read into the record only after being informed of why and how Mr. Zare would not be present to testify as scheduled. A motion for a continuance is addressed to the sound discretion of the trial judge, whose ruling will not be disturbed on appeal unless arbitrary and capricious. *Pankratz v. State,* 663 P.2d 26 (Okl.Cr. 1983). In the case at bar, we find nothing indicative of an arbitrary or capricious ruling. This assignment of error is without merit.

### IV

In her fourth assignment of error, appellant contends that the trial court committed reversible error in admitting, over the objection of defense counsel, testimony elicited by the prosecutor, wherein he asked Detective Hoskinson, of the Norman Police Department, what codefendant Teresa Davis had said about whether she had purchased the gun and if she stated whether anyone was with her at the time of such purchase. Appellant correctly asserts that this testimony is hearsay. 12 O.S.1981, § 2801. However, this Court has long held that error without injury is not reversible. *Thacker v. State,* 26 P.2d 770 (Okl.Cr.1933). We find no injury or prejudice is shown by appellant since the error in allowing the admission of this evidence was cured by testimony of the appellant, and corroborated by another witness, Lyndol Cole, who both testified that codefendant Davis bought the gun on June 14, 1983, and that appellant was present at the time Davis made such purchase. *See Wright v. State,* 142 P.2d 128 (Okl.Cr.1943).

### V

In her fifth assignment of error, appellant contends that she was denied a fair trial because counsel was not provided at the photographic lineup, because the pretrial photographic identification of her was made without the procedural safeguards enumerated in *Thompson v. State,* 438 P.2d 287 (Okl.Cr.1968), and because the lineup was impermissibly suggestive since the identification was tainted and unreliable. We shall address these alleged errors respectively.

Initially, we note that the Supreme Court, in *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), held that there is no right to counsel during a photographic lineup, where the accused is not physically present, even during a post-indictment display. Also see, *Martinez v. State,* 569 P.2d 497, 500 (Okl. Cr.1977). The record reveals that the appellant did not participate in the lineup, but rather the Norman police showed eleven (11) photographs to Mr. Zare, from which he positively identified appellant as his attacker. We find that appellant had no right to have counsel present at the lineup. Secondly, the procedures of *Thompson,* are only recommended, not required as implied by appellant. *See Lee v. State,* 600 P.2d 344 (Okl.Cr.1979). Moreover, they are clearly applicable only to lineups in which the accused physically participates. This alleged error is groundless. Finally pretrial photographic identification will be set aside only if the identification procedure is so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Also see *Reaves v. State,* 649 P.2d 777 (Okl.Cr.1979). We find

that the photographic identification, in the instant case, was not impermissibly suggestive and appellant was not denied a fair trial on this ground, since the record reveals that all the photographs fairly depict black women, like appellant, of the same general weight, height, age and all are similarly clothed so that none stand out from the others.

■ In a subproposition, appellant argues that the lineup was tainted merely because the identifying witness, Mr. Zare, knew, at the time he looked through the photographs, that suspects had been arrested. However, appellant cites no authority which would substantiate his claim that such knowledge alone makes a lineup tainted or impermissibly suggestive; and this Court will not search for such authority. *Wade v. State*, 628 P.2d 376 (Okl.Cr. 1981).

Appellant's next subproposition is that the lineup is impermissibly suggestive because the police may have told Mr. Zare, before he identified appellant, which picture in the lineup depicted the suspect. However, after carefully examining the record, we find there is no indication that appellant's picture was singled out or that the witness was told that appellant was the prime suspect.

In another subproposition, appellant contends that the most suggestive aspect of the lineup is that appellant's picture is allegedly twice as large as the picture next to it, in State's Exhibit No. 10. We note from the record that the allegedly enlarged picture, of which appellant complains, is that of codefendant Teresa Davis, not the appellant. Both Detective Hoskinson and Lyndol Cole testified that appellant is depicted in State's Exhibit No. 1. We find, therefore, that this alleged error is not properly before the Court, since appellant's counsel does not also represent codefendant in her appeal.

■ In her final subproposition appellant cites a plethora of testimony and reasons which allegedly prove that the victim's positive identification of the appellant was "unreliable" and therefore deprived appellant of a fair trial. However, no objection was interposed to such testimony at trial; failure to object waives review of any error on appeal. *See Tucker v. State*, 620 P.2d 1314 (Okl.Cr.1980).

VI

■ For her sixth assignment of error appellant contends that she was denied a fair trial because of six allegedly improper prosecutorial statements. We shall address only the first two, since the record reveals that appellant failed to object, at trial, to the remaining four remarks, and thus we find she has waived her right to object on appeal, absent fundamental error. *See Tucker.* First, appellant claims the prosecutor improperly cross-examined her by asking whether her testimony had changed, regarding the number of nights she had spent at codefendant Davis' home. It is always permissible to cross-examine a witness to determine her credibility, or to undermine it. *See Cummings v. State*, 578 P.2d 377 (Okl.Cr.1978). We find the prosecutor properly attempted to impeach appellant since her testimony on direct examination was conflicting. First, she testified that she spent two nights, June 13th and 14th, at codefendant's house. Then, after more questions by her attorney, she testified that she spent only one night and half a day with codefendant. There was no error. Second, appellant alleges that the prosecutor improperly attempted to define the term reasonable doubt, during closing argument, by saying that the trial is about "reasonable theory, reasonable doubt." In *Williams v. State*, 572 P.2d 257 (Okl.Cr. 1977), this Court held that while it was error for the prosecutor to attempt to define reasonable doubt, reversal was not warranted since the defendant suffered no prejudice. After carefully examining the record, we find that appellant was not prejudiced by the prosecutor's fleeting comments. Moreover, appellant's objection to the prosecutor's remark was not only sustained but the jury was thoroughly admonished. This admonishment cured any er-

ror, which may have occurred. *See Linam v. State*, 569 P.2d 1006 (Okl.Cr.1977).

For the above reasons, the judgments and sentences appealed from are AFFIRMED.

BRETT, J., concurs.

PARKS, P.J., dissents.

PARKS, Presiding Judge, dissenting:

### I.

In this case, the trial court admitted into evidence a transcript of the testimony given by the key prosecution witness at appellant's first trial. The transcript was admitted because the witness was "stranded" while in route from Michigan to Oklahoma to testify. The witness was stranded because of a breakdown in travel arrangements made by the State. This situation does not satisfy the requirements for an unavailable witness within the meaning of Title 12 O.S. 1981, § 2804(A)(5). It also fails to satisfy the confrontational requirements of the Sixth Amendment. *See Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); and *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).

Section 2804(A)(5) requires the State show that it has been unable to procure the witness by process or other reasonable means. Here, the State did not subpoena or bond the witness and was negligent in arranging for his appearance. His whereabouts were fully known. In these circumstances, the State failed to exercise due diligence in securing his attendance. *Cf. Newton v. State*, 403 P.2d 913 (Okl.Cr. 1965).

### II.

Secondly, in the unusual circumstances of this case, where the State's key witness was stranded while in route to testify and could have been made available without unreasonable delay, it was an abuse of discretion for the trial court to deny a continuance which was requested by both the appellant and the State.

### III.

Finally, the trial court also improperly denied the appellant a competency examination. The trial court held that there was *no doubt* as to the appellant's competency despite the fact that: (1) the appellant had been hospitalized for mental problems several times since the age of twelve and had been released from Central State Hospital in Norman only two months before the occurrence of the crime; (2) the appellant testified that she was unable to assist her attorney or understand the proceedings against her; and, (3) appellant's attorney, based on experience in 250 mental health commitments, stated that he believed she was suffering from mental illness and was unable to assist him in her defense. The trial court's determination that there was no doubt as to the appellant's competency was clearly against the weight of the evidence. *Cox v. State*, 644 P.2d 1077 (Okl.Cr. 1982). I would reverse and remand for new trial.